405 So.2d 1203 (1981)
Clyde J. ROBILLARD
v.
P & R RACETRACKS, INC., et al.
No. 14332.
Court of Appeal of Louisiana, First Circuit.
October 12, 1981.
Rehearing Denied November 23, 1981.
*1204 Walton J. Barnes, Joseph P. Macaluso, Jr., Baton Rouge, for plaintiff-appellant.
John I. Moore, Frederick R. Tulley, Baton Rouge, for defendants-appellees.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This suit seeks recovery for damages for personal injuries sustained by plaintiff, Clyde J. Robillard, while engaged in a time trial run of his 1964 Plymouth automobile (referred to by drag racers as a "Super B automatic") on March 7, 1977, at State Capitol Dragway on U.S. Highway 190 near Erwinville, in West Baton Rouge Parish, Louisiana. After trial by jury, verdict was returned by the jury in favor of all defendants, with the trial judge signing a judgment in accordance therewith.[1] Plaintiff's motion for new trial was denied, and the plaintiff has appealed.
*1205 The suit arises out of an accident at the dragway when Robillard, during a time trial run of his stock car, collided with a disabled racing car parked off the racing strip past the finish line. The disabled vehicle, a 1969 Chevrolet Camaro, was being attended to by Patrick Wayne Collins (its driver), Lawrence Thibodeaux and Rodney Harleaux, when it was struck by the Robillard car. Suit was originally brought by Collins, Thibodeaux and the widow of Harleaux against P & R Racetracks, Inc. d/b/a State Capitol Dragway, several of its employees, and Clyde J. Robillard for personal injuries to Collins and Thibodeaux and fatal injuries to Harleaux. Robillard in turn filed suit against the race track, its employees, its insurer, the National Hot Rod Association (NHRA), Collins and David Haynes, the alleged driver of the competing racer.
Prior to trial, the claims of Collins, Thibodeaux and Harleaux were settled, and their suit was dismissed as to all defendants, including Robillard. Robillard's suit came on for trial before a jury on March 24 through 31, 1980. At the close of Robillard's case, a directed verdict was granted in favor of NHRA and several individual defendants, leaving as defendants the track operator, its liability insurer, the owner of the drag strip, two major stockholders of the owner and operator of the track, several individual track employees, and the alleged driver of the competing vehicle. On March 31, 1980, the case was submitted to the jury, which found for all defendants and against Robillard. In jury interrogatories, the jury found none of the defendants negligent, found the plaintiff negligent, found plaintiff had assumed the risk, and found that plaintiff had executed a release and hold harmless agreement with the race track, relieving it and its employees of any liability. After plaintiff's motion for new trial was denied, he perfected this appeal. We affirm.
As stated, the accident occurred during a time trial run at the State Capitol Dragway, and involved the Plymouth automobile being driven by Robillard and Collins' disabled Camaro automobile, which was parked off the racing surface about 300 feet past the finish line of the drag strip. Collins had developed mechanical problems during his run in the right-hand lane of the drag strip and had to coast down the strip past the finish line to get off to the right of the strip. The attendants of Collins' car thought it had "blown" an engine and that there might be oil or debris on the racing surface, so they informed a race track employee of the situation, who in turn advised Norman Pearah, co-owner of the track. Pearah then drove down the drag strip, inspecting the racing surface for any oil or debris, but found none.
After the inspection of the strip, Pearah talked with Robillard, who was getting ready to run his time trial, about the track's condition and the location of the disabled Camaro, off the track. Testimony by other eyewitnesses corroborated that the Camaro was parked off the racing surface.
Not only was Robillard thus informed of the location of the disabled car, but, before making his run, he could see the car off the track. He testified:
"I saw the white Camaro that had broken down past the finish line approximately three, four, or five hundred feet, whatever, and he was pulled off of the track into the grassy area and the left rear wheel was partly on the old surface of the track, not the new surface."
The plaintiff failed at the trial court level to convince the jury that any of the defendants were negligent. We find that the jury findings and verdict were based on substantial evidence from the testimony of numerous witnesses at the trial.
First, after Collins made his run in the Camaro and developed mechanical problems, Pearah, a co-worker, made a visual inspection of the drag strip by driving down the track to a point past the finish line to check for oil or debris. Finding that the Camaro was off the track several hundred feet past the finish line and that there was no oil or debris on the track surface, the time trials were resumed. It is not regarded, in drag racing, as unreasonably dangerous or unsafe to allow a car to engage in a *1206 time trial run, even though a disabled car may be off to the side near the track and beyond the finish line. The evidence established that the accident was not caused by oil or debris on the track, or that the track facilities caused or contributed to the accident.
The primary contention of the plaintiff was that the accident occurred when he was forced to take evasive action to avoid colliding with a green car racing in the left hand lane, which, according to Robillard, swerved in front of him as he was making his time trial run. Plaintiff stated that this green car was of a different class from his much faster racing car, which he claimed to have been a factor in causing the accident.
Contrary to the assertion of plaintiff, the substantial weight of the evidence established that there was no other car racing in the left lane at the time of Robillard's run, and that Robillard was alone on the track at the time of the accident. Haynes (the alleged driver of the green car) was not racing due to car trouble; and, in fact, he was in the bleacher stands at the time of the accident and actually witnessed the Robillard time trial run and accident. Of the other witnesses who testified at the trial, six of them (most of whom were called to the stand by Robillard), testified that there was no other car on the drag strip in the left lane when Robillard made his run. There is amply evidence to establish that Robillard was racing alone when he lost control of his vehicle, and that the "green car" was a "phantom car."
In any event, the assumption of risk doctrine is dispositive of the instant case. In his charge to the jury, the trial judge instructed the jury that the defendants had the burden of proving that plaintiff had assumed the risk of harm that happened to him; that in order to conclude that plaintiff had assumed the risk, the jury had to find that plaintiff fully understood the danger which was involved and that plaintiff then voluntarily exposed himself to the danger or risk of harm. This instruction tracks the language of 2 Louisiana Jury Instructions, Civil, 67 (1980), which cited Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971). See Symposium: Assumption of Risk, 22 La.L.Rev. 1 (1961). To jury interrogatories numbers 23 and 24, the jury responded that Robillard assumed the risk of the accident and injuries sustained by him and that such assumption was a cause thereof.
For a plaintiff to assume a risk, he must knowingly and voluntarily encounter the risk which caused him harm; plaintiff must understand and appreciate the risk involved and must accept the risk as well as the inherent possibility of danger which may result from that risk. Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1976); McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975); Dorry v. Lafleur, 387 So.2d 690 (La.App. 3 Cir. 1980). As our Supreme Court stated in Prestenbach, the necessary ingredient for a plaintiff to assume a risk is "knowledge;" there must be a "knowing assumption of risk," which means that a plaintiff has actual knowledge of the risk involved, or knowledge is imputed to him because he actually makes certain observations and, from them, he should reasonably have known that a risk was involved. 340 So.2d at 1335.
As the Court said in Bass v. Aetna Insurance Company, 370 So.2d 511 (La. 1979):
"Assumption of the risk therefore is properly applicable to those situations where the plaintiff, with knowledge of the peril, voluntarily enters into a relationship with defendant involving danger to himself because of defendant's contemplated conduct."
It is established that Robillard, an experienced driver who had actively been engaged in racing for some 20 years, "voluntarily" entered into a racing activity that might involve danger to himself due to other racers' behavior or conditions on the drag strip.
Several Louisiana decisions have discussed assumption of risk in cases dealing with participation of plaintiffs in games, contests or sports. In Richmond v. Employers' Fire Insurance Company, 298 So.2d 118 (La.App. 1 Cir. 1974), writ denied, 302 So.2d 18 (La.1974), the Court stated that:

*1207 "[O]ne who participates in a game or sport assumes the risk of injuries which are inherent in or incidental to that game or sport."
Other cases involving sports dealing with the question of negligence or assumption of risk include: Gaspard v. Grain Dealers Mutual Insurance Company, 131 So.2d 831 (La. App. 3 Cir. 1961); Benoit v. Hartford Accident & Indemnity Company, 169 So.2d 925 (La.App. 3 Cir. 1964); Benedetto v. Travelers Insurance Company, 172 So.2d 354 (La. App. 4 Cir. 1965), writs denied, 247 La. 872, 175 So.2d 108 (1965); Hyland v. Durr, 212 So.2d 158 (La.App. 4 Cir. 1968).
In Alfonso v. Market Facilities of Houston, Incorporated, 356 So.2d 86 (La.App. 1 Cir. 1978), writ denied, 357 So.2d 1169 (La. 1978), this Court held that:
"[O]ne who voluntarily utilizes such [recreational] facilities assumes the reasonably foreseeable risks which are inherent in the use thereof."
According to the evidence, plaintiff had actual knowledge of the presence of the disabled Camaro some few feet off the drag strip several hundred feet beyond the finish line. He knew the condition of the track. He was a capable and experienced drag-racing driver. Drag racing is a dangerous sport; plaintiff knew of its inherent danger. He actually, subjectively comprehended the risk of undertaking a time trial run under the existing conditions. Robillard clearly proceeded in the face of the known danger by voluntarily racing his car. Considering the foregoing principles, we are of the opinion that the jury and the trial court were correct in concluding that plaintiff knowingly assumed the risk of injuring himself and that no negligence on the part of the defendants has been shown.
On this appeal, the plaintiff takes the position that the trial court's charge to the jury was inadequate, confusing and misleading in that it was based on proximate cause rather than duty-risk in determining negligence, and in that the charge improperly stated the risk assumed by the racing driver. However, no obligation to any instruction was made by either party until after the jury had been retired for its deliberation.
Since the appellant did not object timely (properly), he is precluded from this assignment of error in this Court. Alexander v. Alton Ochsner Medical Foundation, 276 So.2d 794 (La.App. 4 Cir. 1973), writ denied, 279 So.2d 695 (La.1973). LSA-C. C.P. art. 1793 sets forth the time for objecting to jury charges as being before the jury retires to consider its verdict. The jurisprudence interpreting this procedural article holds that where a party fails to object to jury instructions prior to the jury's retirement for deliberation, he waives any defects therein. Ainsworth v. Bituminous Casualty Corporation, 379 So.2d 1187 (La. App. 3 Cir. 1980), writ denied, 381 So.2d 1233 (La.1980).
Nevertheless, the charge concerning negligence now objected to was given by the judge as a part of his general comments on negligence and was in no way prejudicial to the plaintiff's case. When this charge on negligence is viewed in light of the entire charge given to the jury, it is plain that the trial judge did not suggest that the jury was not allowed to consider "duty-risk" in determining negligence, as the appellant claims; the judge clearly stated the standard of care by which the jury was to measure the defendants' conduct.
We have reviewed the instructions of the trial court in light of the allegations, the issues and evidence presented in the trial of the instant case. We find that these instructions fairly and reasonably point up the issues presented by the pleadings and the evidence and provide correct principles of law for the jury's application to the facts. We hold that the instructions given herein were proper; they did not deprive the plaintiff of a meaningful jury trial and they enabled the jury to reach a verdict which is fully supported by the evidence and the law. Hebert v. Ordoyne, 388 So.2d 407 (La.App. 1 Cir. 1980); Hanks v. Drs. Ranson, Swan & Burch, Ltd., 359 So.2d 1089 (La.App. 3 Cir. 1978), writ denied, 360 So.2d 1178 (La.1978).
*1208 At trial, the defendants were properly allowed to introduce into evidence a tech card signed by Robillard on the day of the accident. This tech card contained a "Release of Liability" clause reading as follows:

"RELEASE OF LIABILITY
"This release limits your right to recovery of damages in case of accident. Read it before signing.
"In applying to enter this race I promise that I will inspect the track prior to running on it, will assure myself that the track and adjacent areas are properly designed and maintained, and further agree that I will not participate in this race until I have completed an inspection which satisfies me that these areas are safe for race purposes. I will further note existing weather conditions and do agree that I voluntarily assume all risks arising from conditions related to use of the track area by myself or others.
"I do agree to hold harmless and indemnify the owners and possessors of this track for any loss, cost, expense, damage or injury arising from my participation in this event."
There have been several cases in Louisiana dealing with such "release of liability" or "hold harmless agreements." For example, in Forsyth v. Jefferson Downs, Inc., 152 So.2d 369 (La.App. 4 Cir. 1963), writ refused, 244 La. 895, 154 So.2d 767 (1963), the Court set down the general rule that under Louisiana Civil Code Article 11[2] it is not in contravention of public policy for a party to assume the risk of injuring himself or his property in consideration of his use of the premises (a race track). Also, see Peninsular Fire Insurance Company v. Louisiana Debating & Literary Association, 385 So.2d 510 (La.App. 4 Cir. 1980), writ denied, 393 So.2d 742 (La.1980).
As can be seen from the evidence, Robillard knew of the inherent dangers involved in drag racing. He was an experienced drag car racer. He was aware of the risk, understood it, and appreciated it before he signed the assumption of risk release clause in the tech card.
A jury verdict should be maintained unless the record reflects that its conclusions of fact are not supported by the evidence, and/or its application of the law is clearly erroneous. Perrin v. St. Paul Fire and Marine Insurance Company, 340 So.2d 421 (La.App. 4 Cir. 1976). In the absence of manifest error, the appellate court is not to disturb the finding of the jury which has evidence before it furnishing a reasonable factual basis for its verdict, based on its reasonable evaluation of credibility; Harris v. State Through Huey P. Long Memorial Hospital, 378 So.2d 383 (La.1979); the record does not reveal that the finding is clearly wrong or manifestly erroneous, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In addition, we have carefully reviewed and evaluated the record, and we find no liability on the part of the defendants. They exercised the required amount of care toward Clyde J. Robillard that the particular circumstances and conditions demanded; Robillard assumed the risk of harm and the defendants were not negligent. The factual findings of the jury in determining the issues of liability of the defendants in the case at bar are supported by credible evidence in the record. We have thoroughly reviewed the evidence and under the particular facts and circumstances of this case, we find no manifest error in the jury's findings.
For the assigned reasons, we affirm the judgment appealed at appellant's costs.
AFFIRMED.
NOTES
[1] Judgment was rendered and signed in favor of defendants, P & R Racetracks, Inc., Norman Pearah, Charles Rogers, C & N Land Investments, Inc., Charlie Simoneaux, Rosemary Simoneaux, Cary Menard, Jerry Diecks, Wayne Pitre, David Haynes, National Hot Rod Association, Vallery Pitre, Ruth Pitre, Jerry Virgadamo, American Home Assurance Company and Lynnwood Dupre.
[2] LSA-C.C. art. 11 states:

"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals. "But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."