447 So.2d 83 (1984)
Madalyn COCHRANE
v.
WINN DIXIE OF LOUISIANA, INC.
No. CA-1311.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
*84 Joseph W. Thomas, Ernest Caulfield, New Orleans, for plaintiff-appellant.
Dan R. Dorsey, River Ridge, for defendant-appellee.
Before KLEES, BYRNES and WILLIAMS, JJ.
KLEES, Judge.
This suit was brought by the plaintiff-appellant, Madalyn Cochrane, against Winn Dixie Louisiana, Inc., after she was hit in the head by two two-pound bags of carrots in the produce department at a Winn Dixie grocery store. The case was tried before a jury which returned a verdict in favor of Winn Dixie. The jury's verdict was subsequently made the judgment of the Court. From this adverse judgment Mrs. Cochrane appeals.
The issues presented on appeal are (1) that the jury instructions on causation and aggravation of a pre-existing condition when combined with the jury verdict form used, forced the jury not to consider whether Winn Dixie's negligent act was the cause in fact of the plaintiff's injuries because that negligence aggravated a pre-existing condition, and (2) that the jury's findings that Winn Dixie was at fault, but that that fault was not the cause in fact of the plaintiff's injuries are clearly erroneous. For the following reasons, we affirm the judgment of the trial court.
The plaintiff was shopping in a Winn Dixie store on September 5, 1980 with her daughter when she was injured. While bending over to select some bell peppers in the produce section she was hit on the head by two two-pound bags of carrots which fell from a cart stacked with produce which was being pushed by a Winn Dixie employee. The plaintiff testified that as a result of the incident, her head began to hurt and she was dizzy. She went home, took 2 BC's and stayed in bed. The next day, Saturday, she remembered feeling dizzy upon attempting to get out of bed. On Sunday, her husband persuaded her to get up and have breakfast with the family. While at the table the plaintiff began to feel strange and testified that she heard a voice telling her that she would die soon. On Monday, still feeling bad, the plaintiff went to work. She attempted to see her regular internist, Dr. Arnold Lupin, on Tuesday, but was unable to. Dr. William Stallworth, who was recommended by a friend of the plaintiff, agreed to see her. Dr. Stallworth insisted that she enter the hospital right away, so she checked in that Thursday evening at Hotel Dieu Hospital. The plaintiff was treated by Dr. Stallworth at Hotel Dieu for approximately a week. The plaintiff was also seen by Dr. Lynn Simon, a psychiatrist, while she was in the hospital.
Subsequent to this hospitalization, the plaintiff continued to see her internist, Dr. Lupin, who hospitalized her for approximately a week some months after the incident at Winn Dixie. Dr. Lupin suggested to the plaintiff that she seek professional help other than himself for her anxiety. In October of 1981 the plaintiff sought help from Dr. Wakeman at the Ochsner Stress Clinic. The plaintiff was treated at Ochsner for four weeks as an inpatient and thereafter on an outpatient basis for several months. The plaintiff began treatment with Dr. Morris Jeff, a social worker, in June of 1982 and then with Dr. C.B. Scrignar, *85 a psychiatrist, in October of 1982, by whom she was being treated at the time of trial.
Mrs. Cochrane denied having any similar problems prior to the Winn Dixie incident, but her hospital records indicate that she had complained of similar symptoms on prior occasions. Dr. Lupin had seen her in 1974 when she complained of a smothering in her chest, difficulty sleeping, and weight loss. He placed her on Triavil, a tranquilizer, and diagnosed her problem as a biloral spasm and mild anemia. Dr. Lupin treated the plaintiff continuously through the date of the Winn Dixie incident, but did not make any association between the illness he treated her for and the incident.
Dr. Stallworth, who first saw the plaintiff on September 11, 1980, found no trauma to her head and could not relate the Winn Dixie incident to the symptoms complained of. He did not know what caused the onset of the anxiety the plaintiff was suffering from. While the plaintiff was under Dr. Stallworth's care at Hotel Dieu, she was seen by Dr. Lynn Simon.
Dr. Simon saw the plaintiff on one occasion and he diagnosed her as having had a neurotic anxiety reaction and indicated that there was a hysterical component to her personality. He also felt that the injury sustained at Winn Dixie was the proximate cause of the physical injury, that is, the headaches and subsequent pain, and was also a direct cause of the resultant anxiety neurosis. Dr. Simon had no history other than that given by the plaintiff and because she was not under psychiatric care, there was no evidence that she was suffering from any ongoing physical or mental problems at the time of the incident.
Approximately one year after the Winn Dixie incident, the plaintiff sought help at the Ochsner Clinic. Dr. Richard Wakeman, a clinical psychologist, treated the plaintiff there. Dr. Wakeman testified that he could not connect the incident of the carrots hitting the plaintiff on the head with the problems that he treated her for. He said, "I don't think there's much reasonable medical probability that her symptoms were an outgrowth of that event."
Dr. C.B. Scrignar, the psychiatrist who had been treating the plaintiff since October of 1982, diagnosed her as having posttraumatic stress disorder. He said that the incident at Winn Dixie was related to her anxiety condition, and in fact it precipitated her post-traumatic stress disorder. Three of the physicians who examined the plaintiff prior to Dr. Scrignar did not agree with his diagnosis.
Dr. Patricia Sutker, a clinical psychologist, saw the plaintiff in February of 1983 at which time she conducted extensive psychological testing upon her. Dr. Sutker did not agree with Dr. Scrignar's diagnosis of post-traumatic stress disorder and she did not believe that that one incident could have caused the amount of stress and suffering, that was described by the plaintiff. Dr. Simon also disagreed with Dr. Scrignar's diagnosis of post-traumatic stress disorder, as did Dr. Wakeman.
The first issue raised on appeal, the jury instructions and jury verdict form, is governed by LSA-C.C.P. art. 1793. That article says,
A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A part may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.
It is clear from our review of the record that counsel for appellant made no objection *86 at any time to the jury instructions given. The appellant may not now assign this as error in the Court of Appeal. In Robillard v. P & R Racetracks, Inc., 405 So.2d 1203 (La.App. 1st Cir.1981) the Court said:
"The jurisprudence interpreting this procedural article holds that where a party fails to object to jury instructions prior to the jury's retirement for deliberation, he waives any defects therein. Citing Ainsworth v. Bituminous Casualty Corporation, 379 So.2d 1187 (La.App. 3rd Cir. 1980), writ denied, 381 So.2d 1233 (La. 1980)" 405 So.2d 1203, 1207.
We therefore find no merit to the appellant's first assignment of error.
The second issue presented concerns the jury's determination of fault and causation. The jury in this case heard testimony from fourteen live witnesses and heard the deposition of one witness read aloud in court. Of those fourteen witnesses, ten presented expert testimony concerning Mrs. Cochrane's mental, physical and emotional health. There was a great deal of complicated medical and diagnostic evidence presented to the jury whose duty it was to assign weight and credibility to all or none of it. In Guidry v. David, 382 So.2d 250, 253 (La.App. 3rd Cir.1980), the Court said:
"It is also well settled that the jury or trial judge may, and should, assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder's determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous. Green v. State, Southwest Louisiana Charity Hosp., 309 So.2d 706 (La.App. 3rd Cir.1975); Monette v. Aetna Cas. & Sur. Co., 352 So.2d 423 (La.App. 3rd Cir.1977). After weighing and evaluating all of the medical evidence, and in most cases the lay testimony, relating to the injuries sustained by a plaintiff, the jury or trial judge may accept or reject the opinion expressed by any medical expert, depending upon how he is impressed with the qualifications and the testimony of that expert. Touchet v. Fidelity and Casualty Co. of New York, 264 So.2d 752 (La.App. 3rd Cir.1972)"
After reviewing the trial court record we cannot conclude that the jury verdict and judgment of the trial court are clearly wrong. It is well settled that a jury verdict should be maintained unless the record reflects that its conclusions of fact are not supported by the evidence, and/or its application of the law is clearly erroneous. Robillard v. P & R Racetracks, Inc., 405 So.2d 1203 (La.App. 1st Cir.1981). Accordingly, for the above stated reasons, the judgment of the trial court is affirmed. Costs of this appeal to be borne by appellant.
AFFIRMED.