370 So.2d 511 (1979)
Loyd BASS, and Vonnie R. Bass
v.
AETNA INSURANCE COMPANY, and Southern Farm Bureau Casualty Insurance Company.
No. 63361.
Supreme Court of Louisiana.
April 9, 1979.
Rehearings Denied May 21, 1979.
*513 John A. Cvejanovich, Anderson, Toledano & Courtney, Covington, for plaintiffs-applicants.
Charles M. Cassidy, Watts & Cassidy, Franklinton, for Aetna Ins. Co.
John J. Hainkel, Jr., Porteous, Toledano, Hainkel & Johnson, New Orleans, for Southern Farm Bureau Casualty Ins. Co.
DIXON, Justice.
Mr. and Mrs. Loyd Bass sued Aetna Insurance Company, insurer of Mr. Kenneth Fussell under a homeowner's policy, and Southern Farm Bureau Casualty Insurance Company, insurer of Shepard's Fold Church of God, seeking damages for personal injuries suffered by Mrs. Bass when Mr. Fussell, a member of the Shepard's Fold Church, ran down the church aisle and collided with Mrs. Bass, also a member of the church, who was in the aisle praying. The defendants denied all allegations of negligence on the part of their insureds, and, alternatively, pleaded the affirmative defenses of assumption of the risk and contributory negligence. After trial on the merits, the Twenty-Second Judicial District Court for the Parish of St. Tammany dismissed plaintiffs' suit and on appeal the First Circuit Court of Appeal affirmed the dismissal in an unpublished opinion. Upon plaintiffs' application we granted writs.
On the evening of February 12, 1974, during a revival service, the Shepard's Fold Church of God was very crowded with not enough seats to accommodate all the parishioners. Consequently, Mrs. Bass and other parishioners who could not find seats were standing in the aisles of the church. Reverend Rodney Jeffers, in the course of preaching to the congregation, stated that the doors of the church should be opened and referred to the possibility of "running." Immediately afterward, Mr. Fussell began running up the aisle and ran into Mrs. Bass, who was in the aisle praying with her head bowed. As a result, Mrs. Bass fell and was injured.
The issues are whether Mr. Fussell was negligent, whether the Shepard's Fold Church of God was negligent, and, if so, whether the plaintiffs' action is barred by either the defenses of assumption of the risk or contributory negligence.[1] Although Mr. Fussell testified that he was "trotting" under the Spirit of the Lord and does not remember actually running into Mrs. Bass, another witness testified that she saw Mr. Fussell run into Mrs. Bass and knock her down. If Fussell's defense is that he was not in control of his actions, it can be compared to voluntary intoxication, which will not exonerate one from delictual responsibility. A worshiper in church has no more *514 right to run over a fellow worshiper in the aisle than a passerby on the sidewalk. Mr. Fussell breached this duty and was negligent when he trotted or run down the aisle of the church without regard for the safety of other parishioners in the aisles.
Actionable negligence also results from the creation or maintenance of an unreasonable risk of injury to others. In determining whether the risk is unreasonable, not only the seriousness of the harm that may be caused is relevant, but also the likelihood that harm may be caused. Guilbeau v. Liberty Mutual Insurance Co., 338 So.2d 600 (La.1976). In the instant case, according to both Mrs. Bass and Reverend Jeffers, there were approximately three hundred fifty to three hundred seventy-five parishioners in the church on the night of the accident, and many of the parishioners were standing in the aisles. Reverend Jeffers recognized the likelihood that harm might be caused by this crowded condition because he testified that he asked that the aisles be cleared, that he encouraged "open response to the Spirit," and that running or moving "in the Spirit" were common forms of religious expression in Shepard's Fold Church. Another defense witness testified that Reverend Jeffers, recognizing the crowded aisles, asked if somebody would run for him[2] (which apparently is what Mr. Fussell did). Reverend Jeffers did not stop the service to clear the aisles, but continued to maintain an unreasonable risk of injury to the parishioners. The Shepard's Fold Church is responsible for the negligence of its pastor, Reverend Jeffers, under these circumstances. C.C. 2320.
Concluding that both Mr. Fussell and the church were negligent, we next consider the defenses of assumption of the risk and contributory negligence. The Court of Appeal, in affirming the trial court, concluded that Mrs. Bass assumed the risk by remaining in the aisle with her eyes closed, and that she was contributorily negligent by remaining after having been alerted that running might occur.
Assumption of the risk and contributory negligence are affirmative defenses, C.C.P. 1005, and as we stated in Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133, 141 (1971):
"The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard. See Restatement (Second), Torts § 496 (1965); Symposium: Assumption of Risk, 22 La.L.Rev. 1-166. . . ."
Knowledge is the mainstay of this assumption of the risk defense, and this court will impute knowledge to a plaintiff, not because he was in a position to make certain observations, but only when the plaintiff actually made those observations and from those observations should reasonably have known that a risk was involved. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1977). Assumption of the risk therefore is properly applicable to those situations where the plaintiff, with knowledge of the peril, voluntarily enters into a relationship with defendant involving danger to himself because of defendant's contemplated conduct.
We cannot agree with the Court of Appeal's conclusion that Mrs. Bass assumed the risk. Although Mrs. Bass had belonged to the Church of God faith for approximately fifty-five years and the Shepard's Fold Church for approximately twenty-five years, neither she nor any other witness had seen or heard of any injury or collision in any Church of God church. Before the accident, no one, including Mrs. Bass, felt endangered by worshiping in this church. Mrs. Bass unequivocally testified that she *515 had never seen anyone run in the church. The evidence fails to persuade us that Mrs. Bass actually, subjectively[3] comprehended that by praying in the aisle she was incurring a risk of being run over (Guillotte v. Houston General Insurance Co., 368 So.2d 1026 [La.1979]), or that she could or should have known or understood that she was incurring such a risk as, for example, in Schofield v. The Continental Insurance Co., 330 So.2d 376 (La.App.1976), where the spectator at a Zulu parade at Mardi Gras was hit by a coconut thrown from a float.
The defense failed to prove that Mrs. Bass voluntarily assumed or exposed herself to this risk. Movement in the aisles was not an extraordinary condition in this church because worshipers frequently went to the altar, "the very central focal point in the church," for prayer. Heedless running in the aisle was an unusual and extraordinary hazard, to which plaintiff did not knowingly expose herself. Rosenberger v. Central Louisiana District Livestock Show, 312 So.2d 300 (La.1975).[4]
Contributory negligence is also an affirmative defense; the defendants bear the burden of proving contributory negligence by a preponderance of the evidence. Contributory negligence is objectively determined under the "reasonable man" standard. McInnis v. Fireman's Fund Insurance Co., 322 So.2d 155 (La.1975). It is not contributory negligence to bow one's head when praying in a church, whether in the pew or in the aisle.
The plaintiffs also ask this court to award damages, or, in the alternative, remand this case for a determination of quantum. As a matter of policy this court usually does not fix damages when neither the trial nor the intermediate court has passed upon this question. Smolinski v. Taulli, 276 So.2d 286 (La.1973). Instead, we remand the proceedings for such purpose.
For the reasons assigned, the judgments of the district court and of the Court of Appeal are reversed; the case is remanded to the Court of Appeal, First Circuit, to fix the damages to which plaintiffs are entitled. All costs are taxed against the defendants.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
SUMMERS, C. J., dissents.
BLANCHE, J., dissents and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I consider that Mr. Fussell was negligent and that his negligence was the sole proximate cause of the accident. Moreover, I do not feel that Mrs. Bass either assumed the risk or was contributorily negligent. I do not find that Reverend Jeffers was negligent; however, even assuming that he was, I do not consider that his negligence was a proximate cause of the accident. Hence, I concur in part and dissent in part.
BLANCHE, Justice, dissenting.
I respectfully dissent.
I believe that Mrs. Bass assumed the risk of the injury which she suffered because she knew, or reasonably should have known, from her own personal experience the demonstrative nature of the church service which she understood and in which she was a willing participant.
NOTES
[1] The "Act of God" defense cannot be seriously considered. An "Act of God" means "force majeure." See Stone, Tort Doctrine, § 45 in 12 Louisiana Civil Law Treatises (1977).
[2] In response to defense counselor, Mr. Cassidy's questions, Mr. Fitzgerald testified on direct examination:

"Q. Did you hear Reverend Jeffers make any statement about opening the doors?
A. Yes, he said to open the doors.
Q. Tell the Court what he said, as best you recall.
A. The best I recall he said to open the doors, he felt like running and he didn't have room because of the crowd and would somebody please run for him."
[3] Although there is testimony that Reverend Jeffers asked the people to clear the aisles, Mrs. Bass and at least one other parishioner, a defense witness, testified that they did not hear this request. Mrs. Bass and several witnesses did hear Reverend Jeffers ask that the doors be opened and mention running, but almost immediately afterward, according to Mr. Fussell's own testimony, Mr. Fussell began running down the aisle and into Mrs. Bass.
[4] In Rosenberger, the plaintiff was injured in a bareback bronco riding contest when the horse ran the plaintiff into the gatepost of a gate in the arena negligently left open during the contest. This court found that the plaintiff had assumed the natural and ordinary risks ancillary to bronco riding but not the extraordinary risks created by negligent operation or maintenance of the rodeo premises.