SHORTESS, Judge.
Heidi Anthony McDaniel (plaintiff-appellant) was injured in a one-car accident in Kentwood, Louisiana, on January 20, 1978. Made defendants were (1) Phyllis A. Tyr-ney, driver of the 1976 Mustang; (2) Allstate Insurance Company, insurer of Phyllis A. Tyrney; (3) Milford Ricks, father of Deanne Ricks, a minor at the time of the accident, and a passenger in the Mustang; and (4) State Farm Mutual Automobile Insurance Company, which provided underin-sured motorist coverage to plaintiff’s mother, Dorothy Rimes. A jury dismissed plaintiff’s suit. Its verdict was returned on a special interrogatory form, wherein the following findings were made:
*1345 1. Was Deanie Ricks negligent?
_ YES / NO
2. was her negligence a proximate cause of the injury suffered by Heidi McDaniel?
_ YES / NO
3. Was Phyllis Tyrney negligent?
/ YES _NO
4. Was her negligence a proximate cause of the injury suffered by Heidi McDaniel?
/ YES _NO
5. Was Heidi McDaniel contributorily negligent?
_YES / NO
6. Was her contributory negligence a proximate cause of her own injury?
_ YES / NO
If your answer to the last question was “yes”, then proceed no further; if your answer was “no”, then go on.
7. Did Heidi McDaniel assume the risk of injury?
/ YES _NO
The specifications of error are (1) that the jury committed error in finding that plaintiff assumed the risk of injury; (2) that the jury committed reversible error in its failure to find Deanne Ricks guilty of negligence, and (3) the jury committed reversible error in failing to award damages to plaintiff.
The undisputed facts are that Friday, January 20, 1978, was a cold, wet day, and it had snowed the day before; that at the time, Deanne Ricks was 17 years old, Phyllis A. Tyrney was 18 years old, and plaintiff was 16 years old; that the three girls were friends and lived near each other in Tangi-pahoa, Louisiana; that Deanne and Phyllis were making plans at Deanne’s house in the late afternoon for an evening outing, when plaintiff came over; that plaintiff was being punished by her mother and could not go out, so she prevailed upon Phyllis to phone her mother to try to get permission for plaintiff to go to the movies in Hammond; that her mother agreed and Phyllis drove plaintiff home so she could dress; that they returned to Deanne’s and then left her house at approximately 7:30 p. m.; that instead of going to Hammond, the girls immediately went to Kentwood to Rouco’s store and bought a fifth of vodka, grape juice, orange juice, ice and cups; that the liquid ingredients were mixed in a gallon milk jug to obtain a concoction called “purple passion;” that they rode around Kent-wood with Phyllis driving for some time; that all three drank liberally from the jug; that they proceeded to Amite and then to Bear Creek Steak House in Montpelier; that they returned to Amite and went through the Sonic Drive-Inn and the Hi-Ho looking for friends; that they consumed the gallon of purple passion, so they stopped at a 7-11 store to get more vodka and juice; that plaintiff, in the passenger bucket seat, rolled the window down but Deanne, in the back seat, complained about the cold air and moved into the front seat, and plaintiff sat on the console between the two bucket seats; that they decided to go to the bars at Pines and at Skinny’s, both north of Kent-wood; that the accident occurred just north of Kentwood on U. S. Highway 51, which was two-laned and blacktopped; that it occurred in a curve just before a bridge; that the Mustang went off the road to the left, came back on the road, traveled in a sideways motion for approximately 150 feet before going on the shoulder to the right, and then hit a tree.
Phyllis testified that she was a little “light-headed” and was feeling the effects of the “purple passion” at the time. Her version of the accident was that she took her eyes off the road as she talked to Deanne; that she heard her car in gravel, looked up, was on the left shoulder, and knew she was in trouble; that Deanne grabbed the steering wheel and started pulling it back to the right; that she hit her brakes and the car went in the ditch.
Phyllis’ testimony was very similar to the version she gave to the investigating policeman, Charles Wall, of the Kentwood Police. Wall testified that Phyllis told him she lost control; . that her car veered to the other side of the road; that her friend grabbed the wheel and started pulling it back; and that she hit her brakes and went into the ditch..
Deanne Ricks testified that the girls planned the night at her house after obtaining the permission of plaintiff’s mother to go to the movies; that they never had any intention of going to the movies, but talked *1346 about driving around and mixing the “purple passion” before leaving her house; that all three chipped in and bought the alcohol and other ingredients, and all three drank it; that this was not the first time they had done this; that this was a “normal, usual type” evening for them; that they drove around Kentwood while drinking; that they went to Bear Creek Steak House and had a drink; that they returned to Amite, got some more ingredients and were proceeding through Kentwood to Pines and Skinny’s at the time of the accident; that shortly before the accident, they passed through Tan-gipahoa, where all three lived, and no one mentioned wanting to go home; that when the car veered to the left, she and Phyllis were looking at something on the floor or fixing the radio; that when she heard the gravel, she reached for the wheel in an attempt to bring the car back to the road; that she threw away the balance of “purple passion” in the jug before the police arrived; and that they had consumed about half of the second mixture at the time of the accident.
Plaintiff denied that she had been told of the drinking plans for the night. She said she thought they were going to the movies. She also denied having drunk “purple passion” ever before. She testified that she helped finish the first mixture but she did not drink from the second because she did not think she should; that she was “very light-headed” when they left the Bear Creek Steak House and she laid back on the seat, but had not passed out; that she was leaning back on the seat gazing out the window; that she heard rocks, closed her eyes, and woke up in the hospital; and that at no time during the evening did Phyllis’ driving alarm her.
On cross examination, plaintiff admitted that occasionally they went out on a Friday night and drank; that she had ridden with Phyllis when Phyllis was “rip-roaring drunk;” that she did not complain when they did not go to the show; that she felt that Phyllis was “giggly” but not drunk when they left the Bear Creek Steak House; that she never complained and voluntarily continued to ride with Phyllis, even though they came through Tangipahoa and within three blocks of her house after leaving Bear Creek Steak House.
Based on this factual scenario, the jury found Phyllis guilty of negligence which proximately caused the accident; that Deanne was not guilty of any negligence which caused the accident; and that plaintiff had assumed the risk of injury. The jury’s decision, unless clearly erroneous, must not be overturned on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We feel that there was a sufficient factual basis upon which a jury could reasonably conclude that Deanne Ricks was not guilty of any negligence which proximately caused this accident. In the face of sudden emergency, not created by her, she instinctively moved to grab the steering wheel in an effort to bring the car back to the road when she heard the car in the gravel on the left side of the road. Her action may have averted more serious injury-
The primary thrust of plaintiff’s appeal is that she did not assume the risk of the accident and her injuries, because she did not knowingly and voluntarily encounter the risk which caused her harm, and because she did not understand, appreciate and accept the risk involved, as well as the inherent possibility of danger because of the risk. Dofflemyer v. Gilley, 384 So.2d 435 (La.1980). We must look at the facts to determine what plaintiff did know. She, along with the other girls, testified that they were not drunk and that Phyllis had been driving safely and alertly, and had given no cause for alarm. But plaintiff admitted that she had gone on drinking sprees such as this one on prior occasions with Phyllis and Deanne, even when Phyllis was drunk; that by the time they had finished the first gallon of “purple passion” she was feeling its effect and was lightheaded and had laid back on the seat to gaze out the window and listen to the radio. She also testified that she felt she should not drink any more after the first mixture because she could not drink anything else. She knew at that time what the effects of the mixture had been on her and knew that *1347 Phyllis was still drinking. She described Phyllis’ condition when they left the Bear Creek Steak House as “giggly” but not drunk. She indicated that she did not know how to define “drunk.” She knew that they had consumed the first gallon and were well into the second batch as they went through Tangipahoa, where they passed within three blocks of her house. She could have gotten out of the car at that time, but she admitted that she did not even think about getting out, and she never complained.
Assumption of risk is an affirmative defense. C.C.P. Art. 1005. In Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), the court states:
The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard. See Restatement (Second), Torts § 496 (1965); Symposium: Assumption of Risk, 22 La.L.Rev. 1-166.
249 So.2d at 141.
Our Supreme Court in Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979), stated:
Knowledge is the mainstay of this assumption of the risk defense, and this court will impute knowledge to a plaintiff, not because he was in a position to make certain observations, but only when the plaintiff actually made those observations and from those observations should reasonably have known that a risk was involved. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1977). Assumption of the risk therefore is properly applicable to those situations where the plaintiff, with knowledge of the peril, voluntarily enters into a relationship with defendant involving danger to himself because of defendant’s contemplated conduct.
370 So.2d at 514.
The jury concluded that plaintiff assumed the risk. The facts indicate that she actually did make certain observations and that she voluntarily entered into and continued a relationship with Phyllis and Deanne involving danger to herself because of their continuous conduct. She observed that she could no longer drink because of the effect the alcohol had on her. She also observed that Phyllis was “giggly” as they left the Bear Creek Steak House. She knew that they were within three blocks of her house before they headed toward Kentwood, but she did not even think of going home. A jury certainly could have reasonably concluded from this set of facts that plaintiff assumed the risk of her own injury. The jury’s finding on this crucial point will not be changed because there was a factual basis for it.
We conclude that the record here clearly establishes a factual basis for all the jury’s findings, and its verdict is affirmed at plaintiff’s costs.
AFFIRMED.