BOWES, Judge.
Defendants Jerome H. Comfort, Jr. and his insurer, South Carolina Insurance Company, appeal a judgment of the district court awarding plaintiff Julie Faber Dun-shee, individually, $3,750.00 and Julie Dun-shee as natural tutrix of her minor son, Christopher Joseph Bell (a/k/a Christopher Joseph Dunshee) $41,000.00 for an injury sustained by Christopher during a “bottle rocket war” on the night of December 27, 1978.
Plaintiff answered the appeal asking that the awards be increased and that the defendants not cast in judgment be held accountable as joint tortfeasors with appellants. We reject plaintiff’s demands and reverse the judgment of the district court.
Each party to this appeal submitted numerous specifications of errors. Because of our finding, it is only necessary to consider defendant-appellant’s specification of error number two:
The jury erred in failing to find the proximate cause of the accident was the contributory negligence and/or assumption of risk on the part of Christopher Dunshee in engaging in the “bottle rocket war”, as well as the negligence of the other boys who participated therein.
On the evening of December 27, 1978, four young friends, Christopher Bell, a/k/a Christopher Dunshee (hereinafter Chris), age 13, Mark Dunshee, Chris’ brother (hereinafter Mark), age 11, Robert Comfort (hereinafter Robby), age 15, and John Williams (hereinafter John), age 15, engaged in a “bottle rocket war” in the yard at 4212 Page Drive, Metairie, Louisiana, the home of Miss Fran, a neighbor to all the participants. The trial testimony establishes that Chris, Mark, and Robby met at Miss Fran’s at between 6:30 and 7:00 p.m. The boys took sides for the “war” with Mark and Robby opposing Chris. Approximately thirty minutes later, John joined the “war” on Chris’ side. The four boys then battled back and forth, firing rockets at each other, for about the next forty-five minutes, until finally one of the bottle rockets fired by Robby struck Chris in his left eye.
It appears that all the bottle rockets used that night (testimony established that the boys had engaged in several “wars” over the preceding days) were supplied by Robby. Chris and Mark both testified that during the last battle the boys had run out of rockets on several different occasions and that each time Robby had obtained additional bottle rockets from his house.
The rockets, along with other fireworks, had been purchased on the Friday before the accident when Robby and Chris had been transported to St. Bernard Parish by Robby’s uncle, Clarence (Pete) Gosman, for the express purpose of buying the pyrotechnics. Because of his participation in obtaining the fireworks, Clarence Gosman and his insurers (South Carolina Insurance Company, his homeowners’ insurer and State Farm Mutual Insurance Company, his automobile liability insurer) were named as defendants in plaintiff’s suit, along with Jerome H. Comfort, Jr., individually and as administrator of the estate of his minor son Robby and their insurer, also South Carolina Insurance Company.
Defendants, Comfort, and South Carolina answered plaintiff’s petition pleading negligence, contributory negligence and assumption of the risk on the part of Christopher Dunshee in engaging in the “bottle rocket war” and further pleaded the contributory negligence of Julie Dunshee in failing to properly supervise the activity of her son and in allowing him to engage in said war.
Defendants also filed third-party demands against the other participants in the “bottle rocket war”, their parents, and their insurers.
Clarence Gosman then filed a third-party demand against Julie Faber Dunshee on the same basis as alleged in Comfort’s third-party demand.
Prior to the trial of this case, Williams, and his homeowners’ insurer, settled with petitioners, and the third-party demand of Comfort and South Carolina as to those parties was dismissed by Summary Judgment on June 28, 1982.
*77 The case proceeded to trial by jury on October 26, 27 and 28,1982. In response to jury interrogatories, the jury found specifically that, at the time of his injury, Chris Dunshee, along with Mark Dunshee, John Williams and Robby Comfort, was engaged in the “bottle rocket war”. They found that Robby Comfort and John Williams were negligent in engaging in the “bottle rocket war” but that negligence was not a proximate cause of the accident. The jury further found Clarence Gosman, Jerome Comfort, Jr. and Julie Dunshee guilty of negligence, but the negligence of Clarence Gosman and Julie Dunshee was not a proximate cause of the accident.
The jury did not find Christopher Dun-shee guilty of contributory negligence or assumption of the risk and proceeded to award $41,000.00 to Christopher Dunshee and $3,750.00 to Julie Dunshee.
Post trial motions for Judgment notwithstanding the Jury Verdict and Motion for New Trial or Additur were denied by the trial court.
Pursuant to the jury verdict, judgment was rendered by the district court on December 10, 1982 in favor of Julie Faber Dunshee individually in the amount of $3,750.00, and in favor of Julie Faber Dun-shee, as Natural Tutrix of her minor child, Christopher Joseph Bell, a/k/a Christopher Joseph Dunshee, in the amount of $41,-000.00 and against defendants Comfort individually, and South Carolina. The plaintiffs’ demands against Comfort, as administrator of the estate of his minor son, Robby Comfort, Clarence B. Gosman and his insurers, South Carolina and State Farm, and the third-party demand against Julie Dun-shee, individually, and as natural tutrix of her minor child, Mark Dunshee, were dismissed. Defendants, Jerome H. Comfort, Jr. and South Carolina were also cast in judgment for court costs and expert fees.
The special interrogatories submitted to the jury show that they found all the boys were engaged in the “bottle rocket war” at the time that Chris was injured. The jurisprudence in this area, which is well settled, is that a child who exhibits the requisite knowledge and understanding and who, as a participant, is injured in the course of a bottle rocket war is held to have assumed the risk of being injured and is therefore barred from recovery for any such injury. See Lefebvre v. Fireman’s Fund American Insurance Co., 304 So.2d 69 (La.App. 1st Cir.1974); Granger v. Robertson, 421 So.2d 977 (La.App. 3rd Cir.1982), Writ denied, 426 So.2d 178, 1983; and Meinke v. Dominguez, 377 So.2d 868, 869 (La.App. 4th Cir.1979).
The facts of both the Lefebvre and Gran-ger cases (supra) closely parallel the case before this court and in each of those cases the courts involved denied recovery to the injured plaintiffs, stating that Lefebvre and Granger respectively had assumed the risks attendant to the shooting of bottle rockets by engaging in the rocket battle.
In Lefebvre (supra), the 1st Circuit, in affirming the judgment of the district court dismissing plaintiff’s demand, commented:
Herein Leslie Lefebvre freely and voluntarily joined the party for the express purpose of shooting rockets at the other group. The danger of a rocket striking a member of the group was ever present. Further, Leslie must have anticipated and contemplated the action of A.C. Fer-achi, a member of the opposing group, of throwing rockets toward his group. Also Leslie was aware of the erratic behavior of a thrown rocket.
Even more similar to the present case is the Granger case (supra) wherein the Third Circuit found thusly:
The evidence as clearly establishes that Timothy Granger assumed the risk as it does that Danny Robertson was negligent. Although Timothy was reluctant to testify that he participated in the fireworks activities, the testimony of the six other participants makes it clear that Timothy and Danny both participated in the “war” firing rockets at one another. The testimony reveals that Timothy freely and voluntarily joined the group for the express purpose of shooting rockets at each other. At the time of the acci *78 dent the contest was reduced to a “war” between Timothy and Danny. The danger of a rocket striking one of the contestants was ever present and Timothy must have been aware of the fact that Danny was going to throw rockets toward him, because he had been doing so.
The foregoing cases make it crystal clear that the key determination to be made by this court is whether Christopher Dunshee assumed the risk of his injury by engaging in a battle with his companions on that fateful December night in 1978. Our consideration is guided by the principles set forth by the Louisiana Supreme Court in Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979), wherein the court stated:
Assumption of the risk and contributory negligence are affirmative defenses, C.C.P. 1005, and as we stated in Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133, 141 (1971):
“The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard. See Restatement (Second), Torts § 496 (1965); Symposium: Assumption of Risk, 22 La.L.Rev. 1-166 .... ”
Knowledge is the mainstay of this assumption of the risk defense, and this court will impute knowledge to a plaintiff, not because he was in a position to make certain observations, but only when the plaintiff actually made those observations and from those observations should reasonably have known that a risk was involved. Prestenbach V. Sentry Insurance Co., 340 So.2d 1331 (La.1977). Assumption of the risk therefore is properly applicable to those situations where the plaintiff, with knowledge of the peril, voluntarily enters into a relationship with defendant involving danger to himself because of defendant’s contemplated conduct.
In the case before us, the injured party, Christopher Dunshee, testified that his parents had told him that fireworks were dangerous (Tr. pp. 108, 133, & 136); that he had engaged in other rocket wars prior to the one in which he sustained his unfortunate accident (Tr. pp. 108 & 133); that he knew that someone could be struck and injured by a rocket (Tr. pg. 133); and that bottle rockets had erratic behavior (Tr. pg. 133). Chris further testified that he had been instructed on proper use of bottle rockets and had been warned not to shoot them from his hand (Tr. pp. 152 & 153).
There was some marginal testimony by Chris that he had “quit” the battle before his injury; however, this was contradicted by his brother Mark who testified as follows:
Q. Mark, did you ever hear anyone say that they were out of bottle rockets?
A. No.
Q. Did you ever hear anybody say they had quit?
A. No.
(Tr. pg. 12) (All transcript references are to Yol. 5 of the record.) The important thing is, of course, that the jury found as a specific factual finding that Chris was actually engaged in the “war” at the time of his injury.
Our detailed examination of the entire record convinces us that the jury was apparently swayed by an understandable sympathy in failing to find that Christopher Dunshee had assumed the risk of his injury by his voluntary participation in the bottle rocket war. However, this finding is so manifestly erroneous that it requires our reversal. Likewise, we find that the trial judge erred in refusing to grant defendant’s Motion for Judgment notwithstanding the Verdict.
Accordingly, we reverse the judgment of the district court and annul the awards contained therein. Each side is to bear their own costs in these proceedings.
REVERSED AND ANNULLED.