774 So.2d 1174 (2000)
Catherine L. GREEN, Plaintiff-Appellant,
v.
HARRAH'S CASINO, Defendant-Appellee.
No. 34,224-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2000.
*1175 Allan R. Harris, Counsel for Appellant.
Cook, Yancey, King & Galloway, by Mary D. Bicknell, Counsel for Appellee, Red River Entertainment of Shreveport Partnership in Commendam d/b/a Harrah's Shreveport Casino.
Before NORRIS, C.J., and CARAWAY and DREW, JJ.
CARAWAY, J.
Plaintiff alleges that she was tripped by an unknown patron while walking through a narrow and crowded area of the casino's gaming floor. Without presenting evidence of the configuration of its gaming tables or the number of patrons on the floor, the casino moved for summary judgment. The trial court ruled that plaintiff failed to oppose the motion for summary judgment with evidence in support of her claim for a defect in the layout of the gaming tables and granted summary judgment. Finding instead that plaintiff has not stated a cause of action, we affirm the dismissal of her suit, but amend to allow for the possibility of amendment of her claim under La. C.C.P. art. 934.

Facts
Plaintiff, Catherine L. Green ("Green"), brought this claim in August 1999 against Red River Entertainment of Shreveport, Partnership in Commendam, d/b/a Harrah's Shreveport Casino ("Harrah's"), to recover damages for injuries she allegedly sustained as a result of tripping over the extended leg of an unknown patron at the casino. In her petition, Green alleged:
The area in which plaintiff was walking was crowded with people playing at the gaming tables. There was very little room between the tables for the plaintiff to negotiate and walk safely. The plaintiff's fall was due to the overcrowding at the tables and the unsafe design of the tables and the walking area between the tables. Because of the overcrowding and the unsafe design of the tables and the walking area between the tables the plaintiff was not reasonably able to anticipate or see the obstruction of the customer's legs extended in front of her.
In its answer, Harrah's denied this claim and thereafter obtained discovery from Green through interrogatories and the taking of her deposition.
Green responded to Harrah's interrogatory concerning the alleged defect in its premises by asserting that the gambling *1176 tables "were only a few feet apart," "making it extremely difficult to pass between the tables while the area was crowded." Within ten feet of the location of her fall, Green reported that "there were dozens of people playing at the gambling tables; there were several tables; several slot machines..."
At her subsequent deposition, Green described the accident in response to five inquiries concerning what occurred, when it occurred, where she was located, and what the unidentified patron was doing. The following exchange expresses the overall gist of her responses:
Q. You were near the game tables?
A. I was on this side. There was some game table on this side and card game over there (indicating). I were coming down the aisle. And then when he put his foot out there, trip, and it bust my knee. And I couldn't even get ...
Q. Ms. Green, when he put his foot out, did that surprise you?
A. It scared me.
Q. So it was unexpected?
A. It was unexpected. I didn't know he was going to do it.
Green later added that the man's extended leg had a plaster cast and that he did not see her. Green also admitted in her deposition that her vision was poor and uncorrected since she could not afford glasses.
Aside from Green's descriptions in her deposition regarding the actions of the other patron and herself, she did not explain how the configuration of the gaming tables or the crowded condition of the aisles caused the accident. She only confirmed that the casino was crowded. Our review of the deposition reveals that Green was never specifically asked to explain how the set-up of the tables may have contributed to the accident, or what was the particular defect in Harrah's premises.
In January 2000, Harrah's moved for summary judgment. Green's deposition, answers to interrogatories and affidavit of Harrah's safety and risk manager (describing Green's report of being tripped by a patron) were filed in support of its motion. Harrah's neither presented evidence describing the gaming area where the accident occurred nor evidence of the number of patrons on the gaming floor at the time of the accident. Green filed no opposing evidence in response to Harrah's motion. The trial court, in granting the motion for summary judgment, noted the lack of evidence that the design of the gaming tables was defective. Green now appeals.

Discussion
Green's petition and answers to interrogatories described Harrah's gaming tables as being only a few feet apart. This caused her some difficulty at the time of the fall in passing between the tables in the crowded area. Harrah's answer denied those allegations. Harrah's evidence in support of its summary judgment did not attempt to show the number of patrons in the area of plaintiffs fall, nor the width of Green's passageway through the gaming floor. Instead, Harrah's argues that Green's deposition testimony negates any assertion of defective premises, because the unknown patron was identified as the only cause of the accident. Therefore, Harrah's insists that it showed the court that Green could not prove an unreasonable risk of harm existed around its crowded tables.
Before reaching the issue presented by the parties concerning the burdens of proof of the moving and non-moving parties in the summary judgment context, it is first necessary to consider the cause of action Green has attempted to plead against Harrah's, and the alleged duty owed by Harrah's to its patrons. Harrah's does not argue that Green has failed to allege a cause of action. Yet in its motion for summary judgment, it did not directly dispute Green's allegations regarding congestion in the area where she fell and the tight passage between the tables. Since an appellate court can consider the exception of no cause of action on its own *1177 motion (La. C.C.P. art. 927B), we choose to review the validity of the alleged cause of action.
In a somewhat similar case involving an overcrowded aisle at a church service, our supreme court held that actionable negligence can result from the creation or maintenance of an unreasonable risk of injury to others. Bass v. Aetna Insurance Company, 370 So.2d 511, 514 (La.1979). In Bass, a church was found negligent for allowing the aisle of its church to become overcrowded during its worship service. The plaintiff, who was standing in the aisle praying, was knocked down and injured by a fellow parishioner who testified that he was "trotting" down the aisle "under the Spirit of the Lord." The supreme court held that the church's minister had recognized the crowded condition, yet had encouraged "open response to the spirit." The court ruled that "in determining whether the risk is unreasonable, not only the seriousness of the harm that may be caused is relevant, but also the likelihood that harm may be caused." Id. The court disagreed with the lower court's view that the plaintiff had assumed the risk by standing in the crowded aisle.
Green argues that Klemetsen v. H. & R. Block, Inc., 569 So.2d 559 (La.App. 5th Cir.1990), addresses the duty of an owner to design walkways within its premises to prevent the unexpected tripping of a patron. In Klemetsen, the plaintiff fell and was injured when attempting to slide her chair from behind a table in a classroom. The court affirmed the jury's determination that the plaintiff's injury was caused "in part by the placement of the tables and chairs in the room by the defendant and in part by plaintiff's negligence in attempting to squeeze between the stuck chair and the table."
Although the above jurisprudence holds that an owner may be responsible in certain circumstances for allowing overcrowded conditions and ill configured aisles and pathways, these cases present situations where the injured parties were placed in locations where the only available route was excessively congested. In a more open setting, such as the hallway of a mall, the aisles of a supermarket or restaurant, or a large gaming floor of a casino, any one avenue of travel available to a customer may at any moment become temporarily congested so as to require the patron to change his route or to slow his movement to the point of stopping altogether in order to take precaution against unexpected collisions with other customers. Such momentary conditions with other options available present no unreasonable risk of harm.
For example, in Thornton v. Board of Supervisors of Louisiana State University, 29,898 (La.App.2d Cir.10/29/97), 702 So.2d 72, this court affirmed a summary judgment in favor of the owner of an outdoor ramp. The plaintiff had admitted that she chose to walk over wet leaves on the walkway, rather than utilizing other available walkways that were not covered with leaves. This court stated that "where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable." Id. at 74.
With this view of the cause of action, the allegations of Green's petition (allegations which we view as uncontested by Harrah's motion for summary judgment) make no claim that other pathways across the gaming floor were unavailable to her at the time she chose to navigate the narrow space in question. Instead, she claims only that "the area in which [she] was walking was crowded." We therefore find that her allegations are insufficient to state a cause of action, and we dismiss her suit on the exception of no cause of action pursuant to La. C.C.P. art. 927B. In accordance with La. C.C.P. art. 934, Green shall be allowed two weeks from the finality of this judgment to amend her petition, if, by amendment, a cause of action can be stated in accordance with the view expressed herein. If no amendment is made, the action shall be *1178 dismissed. The judgment of the trial court dismissing appellant's suit is hereby modified to allow for her rights pursuant to La. C.C.P. art. 934 and, as amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
NORRIS, C.J., concurs.