# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-590

**DORRIS MANECKE AND YENA SNYDER**

**VERSUS**

**GOLDEN NUGGET LAKE CHARLES AND
GNLC HOLDINGS, INC.**

\**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-4154
HONORABLE DAVID RITCHIE, DISTRICT JUDGE

\**********

**CHARLES G. FITZGERALD
JUDGE**

\**********

Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Guy E. Bradberry
Judges.

**REVERSED AND REMANDED.**

**Benjamin D. James**
**Cory P. Roy**
**Brandon J. Scott**
**Roy, Scott & James**
**107 North Washington Street**
**Marksville, Louisiana 71351**
**(318) 240-7800**
**Counsel for Plaintiffs/Appellants:**
     **Dorris Manecke and Yena Snyder**


**Robert M. Kallam**
**Brian J. Lindsey**
**Kean Miller, LLP**
**600 Jefferson Street, Suite 1101**
**Lafayette, Louisiana 70501**
**(337) 422-3655**
**Counsel for Defendants/Appellees:**
     **Golden Nugget Lake Charles and GNLC Holdings, Inc.**

**FITZGERALD, Judge.**

The issue on appeal is whether the trial court erred in granting a casino's motion for summary judgment and dismissing the patrons' tort claims.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs, Dorris Manecke and Yena Snyder, had just finished dining at the Golden Nugget in Lake Charles. The two friends were walking arm in arm toward a restroom in the main lobby. As they neared the restroom, they were forcefully knocked to the floor by Jessica Comeaux, an employee of the Golden Nugget, who had seemingly tripped and barreled into them when she was unable to control her momentum. Dorris's head hit a stone trash receptacle and then the floor; Yena fell backwards directly onto the floor.

Ultimately, Dorris and Yena filed suit against the defendants, Golden Nugget Lake Charles and GNLC Holdings Inc. (collectively referred to as "Golden Nugget"), alleging vicarious liability for Jessica's negligence. At some point in the proceedings, Golden Nugget filed a motion for summary judgment seeking dismissal of the case.

A hearing on the motion was held on February 22, 2022, and the matter was taken under advisement to allow the trial court time to view video evidence. Three days later, the trial court issued reasons for judgment. And three months after that, on June 3, 2022, a final judgment granting the motion and dismissing Plaintiffs' suit was signed by the trial court. Plaintiffs have appealed this judgment.

On appeal, Plaintiffs assert a single assignment of error: "The Honorable Trial Court respectfully erred in granting the motion for summary judgment filed on behalf of Golden Nugget."

# LAW AND ANALYSIS

In reviewing the trial court's decision on a motion for summary judgment, this court applies the de novo standard of review using the same criteria applied by the trial court to determine whether summary judgment is appropriate. *Samaha v. Rau,* 07-1726 (La. 2/26/08), 977 So.2d 880.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The burden of proof in summary-judgment proceedings is set forth in La.Code Civ.P. art. 966(D)(1), which states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"The only documents that may be filed in support of or in opposition to the motion [for summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). "The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum." La.Code Civ.P. art. 966(D)(2).

Here, Plaintiffs have asserted vicarious-liability claims against Golden Nugget. The claims are premised on Jessica's actions during the course and scope of her employment with Golden Nugget. When a trip and fall incident results from the specific act of an employee, as opposed to a condition on the premises, general principles of negligence apply. *Frelow v. St. Paul Fire & Marine Ins. Co.,* 93-759 (La.App. 3 Cir. 2/2/94), 631 So.2d 632. To this end, Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. Under this analysis, Plaintiffs must prove five essential elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Lemann v. Essen Lane Daiquiris, Inc.,* 05-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 633.

In its motion for summary judgment, Golden Nugget attempts to point out that Plaintiffs lack factual support for the breach element. Golden Nugget specifically argues that there is simply no summary-judgment evidence establishing that Jessica violated any duty owed to Plaintiffs. In support, Golden Nugget attached to its motion Jessica's affidavit, excerpts of Yena's deposition, and excerpts of Dorris's deposition.

At this point, Golden Nugget has sufficiently pointed out Plaintiffs' absence of factual support for an essential element of their claims. Hence, the burden of production under La.Code Civ.P. art. 966(D)(1) now shifts to Plaintiffs to produce

evidence of a material factual dispute. In attempting to meet this burden, the summary-judgment evidence relied on by Plaintiffs includes excerpts of Yena's deposition, excerpts of Dorris's deposition, Jessica's deposition, and a surveillance video of the incident at issue. The substance of this evidence is summarized below.

Yena testified in her deposition that Jessica was "walking fast" to the restroom when she "flew" into the two Plaintiffs. Yena recalled that Dorris took the direct hit, but she (Yena) was "knocked down flat on the ground." Similarly, Dorris explained that Jessica was running to the restroom when she came "flying" into the Plaintiffs, knocking them forcefully to the ground. She described the action as "Supermanning" and the impact as "like a tackle." As Jessica herself put it, "I tripped, and when I looked up I was tackling two ladies down."

Additionally, the video evidence of the incident shows Jessica heading across the hallway from the casino gaming floor toward the restrooms. Along the way, she raises her arms while apparently speaking to another individual, then resumes her hurried pace toward the restroom. She appears to begin unbuttoning her jacket as she moves closer to the restroom. It is then that she trips and proceeds to move in large, uncontrolled steps with her shoulders lowered toward the Plaintiffs. Although it is difficult to discern Jessica's exact speed in the video, her exaggerated movements, momentum, and inability to recover from tripping suggest an accelerated pace. Her subsequent collision with Plaintiffs was significant and brutal, knocking both women to the ground and causing Dorris to strike her head on a solid stone trash receptacle.

In its reasons for judgment, the trial court initially found that Jessica had a duty to act with care and in a manner that would not cause harm to others, specifically noting that she had a duty to "avoid running, avoid walking fast, [and]

4

avoid horseplay[.]" The trial court then found that Jessica had not breached any duty owed to Plaintiffs because she had not acted in a negligent manner.

As noted above, Golden Nugget's motion for summary judgment challenges whether Plaintiffs are able to produce evidence showing that Jessica breached the applicable standard of care as she approached and collided with Plaintiffs. Thus, we must initially determine whether Jessica owed Plaintiffs a duty.

To this end, in *Posecai v. Wal-Mart Stores, Inc.,* 99-1222, pp. 4-5 (La. 11/30/99), 752 So.2d 762, 766 (citations omitted), the Louisiana Supreme Court explained as follows:

> Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving.

Here, the trial court correctly concluded that an individual has a duty to behave in a way that is safe and to refrain from running, walking quickly, or horseplaying in an area where they may cause injury to another through such action. This same duty was at issue in *Manning v. Benton,* 98-388 (La.App. 3 Cir. 10/28/98), 721 So.2d 526, *writ denied*, 98-2947 (La. 2/26/99), 738 So.2d 1062. There, a different panel of this court implicitly determined that a student walking in a crowded hallway has a duty not to run, walk fast, or engage in horseplay. *Id.* And in that case, the trial court's finding of negligence was reversed because there was no evidence that the defendant breached this standard of care. *Id.*

5

In our case, by comparison, Jessica was walking to a public restroom located in the grand hallway of the Golden Nugget. And although this area was not congested when Jessica collided into Plaintiffs, we recognize that such a space in a casino is always likely to have people present and may quickly become busy.

For instance, in *Green v. Harrah's Casino,* 34,224, p. 5 (La.App. 2 Cir. 12/20/00), 774 So.2d 1174, 1177, the second circuit explained:

> In a more open setting, such as the hallway of a mall, the aisles of a supermarket or restaurant, or the large gaming floor of a casino, any one avenue of travel available to a customer may at any moment become temporarily congested so as to require the patron to change his route or to slow his movement to the point of stopping altogether in order to take precaution against unexpected collisions with other customers.

In sum, as Jessica approached the door of the restroom, it was reasonable to anticipate that other individuals would be moving in and out of the doorway, necessitating heightened precaution. Therefore, we hold that Jessica owed a duty to Plaintiffs to refrain from running, walking fast, or walking in a distracted manner as she approached the doorway of this restroom.

We now turn to whether Jessica breached this standard of care. In the video of the incident, it is difficult to discern the exact speed of Jessica's walk, but it does clearly show her tripping; she then takes several very large, uncontrolled steps before colliding into Plaintiffs; and Jessica's collision with Plaintiffs was violent and forceful. As the trial court put it:

> I will say, some of those angles of that video, some of those video cameras only showed the part where it looked like [Jessica] was just, you know, tackling—you know, it looked like an NFL game where she was just tackling those ladies. It looks like she had some momentum behind her[.]

Again, the video reveals that Jessica was wildly out of control once she tripped. To reasonably ensure the safety of others, Jessica had a duty to walk in an

attentive manner and at a speed that would allow her to maintain control of her person while nearing the restroom door of a casino, which is an area where a reasonable person would anticipate encountering individuals entering and exiting.

"Ordinarily, the determination of whether negligence exists in a particular case is a question of fact; therefore, cases involving a question of negligence ordinarily are not appropriate for summary judgment. " *Freeman v. Teague,* 37,932, p. 4 (La.App. 2 Cir. 12/10/03), 862 So.2d 371, 373 (citation omitted).

Here too, the determination of whether negligence exists is not appropriate for summary judgment. Plaintiffs in this case have produced summary-judgment evidence of a material factual dispute. The evidence relied on by Plaintiffs in opposing summary judgment (including the surveillance video) calls into question whether Jessica breached the duty she owed to Plaintiffs: reasonable minds could differ on whether Jessica acted in a negligent manner.

In the end, the trial court erred in granting Golden Nugget's motion for summary judgment.

## DECREE

For the above reasons, we reverse the judgment of June 3, 2022, and we remand this matter to the trial court for further proceedings. The costs of this appeal are assessed to Defendants, Golden Nugget Lake Charles and GNLC Holdings Inc.

**REVERSED AND REMANDED.**