479 So.2d 904 (1985)
Beverly Vicknair, Wife of/and Floyd VICKNAIR, and Floyd Vicknair as Administrator of and for the Use and Benefit of the Minor, Eric Vicknair
v.
HIBERNIA BUILDING CORP. and United States Fidelity & Guaranty Co., et al.
Nos. 85-C-0913, 85-C-0917.
Supreme Court of Louisiana.
December 2, 1985.
*906 Robert Ford, Hammett, Leake & Hammett, New Orleans, for defendant-applicant in No. 85-C-0913.
Frank D'Amico, Vincent J. Glorioso, Jr., New Orleans, for plaintiff-respondent in No. 85-C-0913.
Frank D'Amico, Vincent J. Glorioso, Jr., New Orleans, Counsel for plaintiff-applicant;
Robert D. Ford, Hammett, Leake & Hammett, New Orleans, Counsel for defendant-respondent;
MARCUS, Justice.
On November 3, 1976, a fire alarm sounded in the Hibernia Bank Building, and an announcement was made instructing everyone in the building to exit using the stairs. The fire alarm was allegedly set off when employees of Broadmoor Corporation, an independent contractor doing renovation work in the building, caused an unmarked fire alarm wire to be broken. At that time, Beverly Vicknair was eight months pregnant. She was employed on the nineteenth floor, and forced to descend twenty-one flights of stairs (nineteen floors and two mezzanines). Later that day, Beverly noticed that she had begun spotting some blood. The spotting continued the following day and then stopped. On November 9, 1976, she gave birth to her son, Eric, who was not due until late December 1976. At birth, Eric was cyanotic and required resuscitation. He was diagnosed as having Hyaline Membrane Disease, a respiratory disorder caused by immaturity of the lungs which is common in premature infants. Throughout his childhood, Eric has had a high number of respiratory illnesses, including asthma and allergic airway disease.
Plaintiffs filed suit on October 25, 1977 against Hibernia Building Corporation. Later, on January 31, 1979, plaintiffs amended their petition to add Broadmoor as a defendant. After a jury trial, a verdict was returned finding Hibernia not to be negligent, but finding Broadmoor to be *907 negligent and liable for the following damages: $5,980 to Floyd Vicknair for medical expenses incurred by his wife and son; $5,000 to Beverly Vicknair for her physical and mental pain and suffering; $50,000 to Floyd Vicknair as administrator of his minor son for the past, present and future pain and suffering of Eric. The trial judge entered a judgment in conformity with the verdict; Hibernia was dismissed from the suit.
Broadmoor appealed. Plaintiffs answered the appeal, but did not separately appeal that portion of the judgment dismissing Hibernia from the suit. Broadmoor also filed an exception of prescription in the appellate court pursuant to La.Code Civ.P. art. 2163. Broadmoor alleged that since Hibernia was found to be free of negligence, Hibernia and Broadmoor were not joint tortfeasors, and the filing of the suit against Hibernia did not interrupt prescription as to Broadmoor. Broadmoor was not joined as a defendant until more than one year after the incident took place.
On the basis of the exception of prescription, the court of appeal reversed the judgment of the trial court, finding that it could not decide the fault of Hibernia because that party was not before the court. It remanded the case for a trial of the prescription issue.[1] Plaintiffs' application for rehearing was granted by the court of appeal. Meanwhile, plaintiffs and Broadmoor applied to this court for writs. We granted both applications, setting aside the rehearing granted by the court of appeal as not having been timely applied for,[2] and vacating the judgment of the appellate court. We remanded the case to the court of appeal for decision.[3]
On remand, the court of appeal found that the failure of the trial judge to provide instructions to the jury on alternative theories of Hibernia's liability, in addition to negligence, was reversible error. It remanded the case to the trial court for a new trial.[4] Plaintiffs and Broadmoor again applied to this court. We granted both applications to review the correctness of the court of appeal decision.[5]
There are three issues presented by this litigation. First, we must consider the merits of the peremptory exception of prescription filed by Broadmoor. To decide this issue, we must determine whether the fault of Hibernia is before us, though Hibernia has a final, definitive judgment in its favor. If so, then it must be decided whether Hibernia was, in fact, at fault. If the fault of Hibernia is found to be before us, and if Hibernia is found to be at fault, then the timely filed suit against Hibernia would have interrupted prescription as to Broadmoor, and the exception of prescription would be without merit. If there is not merit to the exception, then the fault of Broadmoor would have to be reviewed. Finally, if Broadmoor is found to be liable, it must be determined whether the amount of damages awarded against Broadmoor was proper.

Exception of Prescription
Plaintiffs did not amend their petition to make Broadmoor a defendant until after the one-year prescriptive period had run. La.Civ.Code arts. 3536, 3537 (current version at La.Civ.Code art. 3492). Hibernia was found by the jury not to be at fault; plaintiffs did not appeal that portion of the judgment. Plaintiffs only answered the appeal taken by Broadmoor. Therefore, the judgment in favor of Hibernia and against plaintiffs is final and definitive. La.Code Civ.P. arts. 1841, 1842. Under La.Code Civ.P. art. 2133, an appellee, by answering an appeal without filing an appeal on his own behalf, may seek relief from any portion of the judgment rendered against him in favor of appellant. The article does not, however, give an answer the effect of *908 an appeal with respect to any portion of the judgment rendered against appellee in favor of a party not an appellant. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976). In contrast to Shelton, plaintiffs by their answer to Broadmoor's appeal do not seek to alter any portion of the judgment rendered against them in favor of Hibernia (a party who is not an appellant). Rather, they seek to relitigate the fault of Hibernia to determine whether Broadmoor is liable. Therefore, art. 2133, as interpreted in Shelton, does not bar review of Hibernia's fault.
Broadmoor's argument that the issue of Hibernia's fault cannot be relitigated in the suit between Broadmoor and plaintiffs is truly an argument that some form of collateral estoppel should apply. Collateral estoppel is a doctrine of issue preclusion alien to Louisiana law. Developed in the common law, the device precludes the relitigation of issues actually decided in a prior suit between the parties on a different cause of action. Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La. 1978). There are different theories on whether "mutuality" or identity of the parties is required. Welch, supra. However, collateral estoppel or issue preclusion is not a valid defense in Louisiana. Safeco Insur. Co. of America v. Palermo, 436 So.2d 536 (La. 1983); Welch, supra.
Furthermore, res judicata does not apply in the instant case. In Louisiana, relitigation of the object of a judgment is barred when there is: (1) identity of the thing demanded; (2) the same cause of action; and (3) the same parties appearing in the same quality. La.Civ.Code art. 2286 (current version at La.R.S. 13:4231); Safeco Insur. Co. of America, supra; Dornak v. Lafayette General Hospital, 399 So.2d 168 (La. 1981). All these identities must be present. Welch, supra. There exists an identity of parties whenever the same parties, their successors, or others appear, so long as they share the same "quality" as parties. Welch, supra. The judgment at issue in the instant case exists between Hibernia and plaintiffs. Plaintiffs now seek to determine the fault of Hibernia in an action between plaintiffs and Broadmoor. Broadmoor and Hibernia do not represent the same entity. There is no identity of parties, and therefore, res judicata is not applicable.
In conclusion, plaintiffs are not precluded from relitigating the fault of Hibernia in their case against Broadmoor. See Welch, supra.
The next issue which must be considered to determine whether the action against Broadmoor has prescribed is whether Hibernia was, in fact, at fault. The court of appeal has never specifically reviewed the jury's determination that Hibernia was not negligent. However, because the fault of Hibernia is so interrelated with the prescription issue, and because of the confusion created by the protracted litigation of this case, we will consider this issue without remanding the case for review.
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in La.Civ.Code arts. 2315 and 2316.
Article 2315 provides in the pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Article 2316 provides:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Under these articles, the elements of a cause of action are fault, causation and damage. The conduct of which plaintiff complains must be a cause-in-fact of the harm. After determining causation, the court must also determine what was the duty imposed on defendant, and whether the risk which caused the accident was within the scope of the duty. A breach of a duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles. Dunne v. Orleans *909 Parish School Bd., 463 So.2d 1267 (La. 1985); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Smith v. Travelers Ins. Co., 430 So.2d 55 (La.1983).
In the instant case there was conflicting testimony as to whether Beverly Vicknair's descent of twenty-one flights of stairs caused the premature delivery of her child. At trial, three doctors who specialize in the field of obstetrics and gynecology testified. Two of these doctors, including the doctor who actually treated Beverly Vicknair, specifically stated that the fire alarm incident was a precipitating factor in bringing about the premature labor. The third doctor found that the incident would not have caused or contributed to Eric's premature birth. Based on the evidence in the record, we are unable to say that the jury was clearly wrong in finding that the emotional distress and energy expended by Beverly Vicknair due to the false fire alarm was a cause-in-fact of the premature delivery six days later. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Next, we must determine whether Hibernia owed a duty under the facts herein to ensure that no fire alarm wires would be broken. The evidence in the record presents two different versions of what caused the fire alarm to go off. Richard Allen, an assistant vice president of Hibernia who supervised the renovation, testified by deposition. He maintained that the alarm went off when a Broadmoor workman intentionally cut an exposed wire in order to re-route it above a duct in the ceiling. According to Allen's version of the facts he, himself, had noticed the wire and discussed re-routing it with the Broadmoor foreman. In every other instance in which a fire alarm wire was moved, Broadmoor did not do the work; rather, the company responsible for the alarm system was called, in order to prevent triggering the fire alarm. In this instance, neither Hibernia officials nor Broadmoor workers determined if the wire was part of the alarm system.[6] Another version of the facts was presented by Milton Dudenhefer, foreman for Broadmoor, who also testified by deposition. He asserted that the fire alarm wire was hidden behind a stud, and it was accidentally broken when the stud was pulled from the wall. Considering that the building was fully occupied, that Hibernia was conducting extensive renovation, that a wall was being torn down, and that Hibernia knew that it had fire alarm wires running throughout the building, under either version of the facts, we find that Hibernia had a duty to ensure that no fire alarm wires would be broken.
The question which remains is whether this duty encompasses within its scope the risk that a pregnant woman would experience emotional distress and descend many flights of stairs, causing a premature delivery. We think so. Upon the sounding of a fire alarm, the system was structured so that instructions would be given over the public address system, telling the occupants to evacuate the building by using the stairs. The building was fully occupied. Under these circumstances, we conclude that the risk of plaintiffs' injuries was within the scope of the duty owed. Hibernia breached this duty. Therefore, we consider that Hibernia was negligent under La.Civ.Code arts. 2315 and 2316. The jury was clearly wrong in concluding otherwise.[7]Arceneaux, supra.
*910 When the actionable negligence of two tortfeasors contributes in causing harm to a third party, each of them is responsible for the damage. They are solidarily liable. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); see also La.Civ.Code art. 2324 (amended by 1979 Acts No. 431 § 1 to provide in pertinent part: "Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido...." Since this amendment was not effective until August 1, 1980, it does not apply to the instant case.) The interruption of prescription against one solidary obligor interrupts prescription with regard to all. La.Civ.Code art. 2097 (current version at La.Civ.Code art. 1799); Baker v. Payne and Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980). Therefore, the timely filing of the suit against Hibernia interrupted prescription as to Broadmoor, and Broadmoor's exception of prescription is without merit.

Broadmoor's Negligence
Since this action has not prescribed against Broadmoor, it must be determined whether the jury erred in finding Broadmoor to be at fault. Although the court of appeal has never reviewed this issue, we will consider it due to the confusion which has resulted in this case on the issue of liability.
As previously stated, we find that the emotional distress and energy expended by Beverly Vicknair due to the false fire alarm was a cause-in-fact of the premature birth of her child. Next, we must determine whether Broadmoor owed a duty under the facts herein to know where the fire alarm wires were located and to avoid their being broken. Under Richard Allen's version of the facts, Broadmoor workmen intentionally cut an exposed wire for purposes of re-routing it above a duct in the ceiling, without first determining whether it was a fire alarm wire. Under Milton Dudenhefer's version, Broadmoor did not investigate where the fire alarm wires ran before pulling out a stud. Dudenhefer acknowledged that he knew there were fire alarm wires running throughout the building, and despite the fact that he had contact on three or four occasions with the company responsible for the alarm system, he never inquired where the fire alarm wires were located. Considering that the work was being performed in a major office building occupied at the time, and that Broadmoor had knowledge of the existence of the fire alarm system, under either version of the facts, we find that Broadmoor had a duty to know where the fire alarm wires were located and to avoid their being broken. Such a duty encompasses within its scope the risk that a pregnant woman would experience emotional distress and descend many flights of stairs, causing a premature delivery. Broadmoor breached its duty. Therefore, we consider that Broadmoor was negligent under La.Civ.Code arts. 2315 and 2316, and that the jury was not clearly wrong in this determination. Arceneaux, supra.

Quantum
The remaining issue is whether the amount of damages awarded in favor of plaintiffs and against Broadmoor was proper. The court of appeal has not decided this issue. We consider it more appropriate to remand the case to that court for it to determine the amount of plaintiffs' recovery.

Decree
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for *911 further proceedings consistent with the views expressed herein.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Collateral estoppel is a judicial doctrine which Louisiana courts should be free to apply or reject, regardless of the fact that res judicata has been expressly defined by the Legislature. Collateral estoppel is designed to complement res judicata (however defined), and the doctrines are not mutually exclusive. I would overrule Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978) in the appropriate case. However it is not necessary to do so in the present case because collateral estoppel is not applicable under these circumstances.
Collateral estoppel only applies when there is an attempted relitigation of an issue between the same parties. Here, there is no attempt to relitigate the issue of Hibernia's fault in a proceeding between Hibernia and the plaintiffs. Just as res judicata does not apply to this relitigation of Hibernia's fault between Broadmoor and the plaintiffs, collateral estoppel does not apply because of the same lack of identity of parties. The issue of Hibernia's fault is subject to review in this appeal between Broadmoor and plaintiffs, not for the purpose of determining Hibernia's liability to plaintiffs, but for the purpose of determining whether Hibernia and Broadmoor were solidarily liable so that plaintiffs' suit against Hibernia interrupted prescription as to Broadmoor.
NOTES
[1] 459 So.2d 685 (La.App. 4th Cir.1984).
[2] 462 So.2d 202 (La.1984).
[3] 461 So.2d 1054 (La.1985); 462 So.2d 887 (La. 1985).
[4] 468 So.2d 695 (La.App. 4th Cir.1985).
[5] 472 So.2d 23 (La.1985).
[6] Two other depositions of Hibernia officials were filed on April 20, 1984over eighteen months before trial. The record does not reveal that the depositions were introduced into evidence. The depositions, however, generally substantiate what was testified to by Allen.
[7] We note that the jury could have concluded that Hibernia was not at fault because the interrogatories failed to present them with a clear question as to whether both defendants were liable. The judge charged the jury, "[I]f you find that either of the defendants, the Hibernia Building Corporation or the Broadmoor Corporation, were guilty of any negligence herein ... then you must render a verdict in behalf of the plaintiffs." (Emphasis added.) Further, on the second day of trial, Broadmoor and Hibernia entered into an agreement, which was explained to the jury, whereby Broadmoor agreed to fully indemnify and hold harmless Hibernia from any judgment rendered against Hibernia, and Broadmoor agreed to assume Hibernia's defense. This lack of choice presented by the interrogatories, compounded by the agreement, could have lulled the jury into believing that they could find only one defendant liable, and since Hibernia was out of the suit, they should find Broadmoor to be at fault. The plaintiffs did not object to the jury charges, however, and, therefore, they cannot now assign them as error. La.Code Civ.P. art. 1793; Housing Authority of New Orleans v. Gondolfo, 208 La. 1065, 24 So.2d 78 (1945); Cochrane v. Winn Dixie of Louisiana, Inc., 447 So.2d 83 (La.App. 4th Cir.) not considered; not timely filed, 449 So.2d 1353 and reconsideration denied, 450 So.2d 951 (La. 1984).