479 So.2d 1085 (1985)
James Richard BLACKWELL, Plaintiff-Appellee,
v.
James C. BLACKWELL, Defendant-Appellant.
No. 84-875.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1985.
*1086 William D. Dyess, Many, for defendant-appellant.
Burkett & Chevallier (Edward Chevallier, Many, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
KNOLL, Judge.
James C. Blackwell (hereafter Mr. Blackwell) appeals the trial court's judgment in favor of his son, James Richard Blackwell (hereafter James), awarding $3,925 damages for malicious prosecution. Mr. Blackwell assigns as error: (1) that the trial court erred in finding that James proved every element of malicious prosecution as required by law; and (2) that James failed to show that Mr. Blackwell acted with malice and with lack of probable cause. We affirm, finding that James proved the requisite elements of malicious prosecution.

FACTS
There was marital discord between Mr. and Mrs. James C. Blackwell. In March 1983, before any legal proceedings were filed, James accompanied his mother, Juanita Blackwell, to a camp owned by the community existing between Mr. and Mrs. Blackwell, located on Toledo Bend near Many. Mrs. Blackwell asked James to assist her in transporting some of her personal belongings and community property to her residence in Sulfur. When they arrived, the doors were locked, and unbeknown to Mrs. Blackwell, the locks had been changed by Mr. Blackwell. He did not give her a set of keys after changing the locks. Mrs. Blackwell then broke a window pane, crawled through the window, and unlocked the door. She bought new locks and had James replace them; he also replaced the broken window pane. Mrs. Blackwell removed some of her personal items, sheets, pillowcases, silverware, a boat, a fishing rod, a boat paddle, and a life jacket. They also took a small utility trailer and a pair of skis, which belonged to James. James did not remove anything from the camp without his mother's advice or consent.
On April 19, 1983, Mr. Blackwell telephoned James at approximately 2:00 a.m., cursing him and accusing him of stealing items from his camp. During the conversation, Mr. Blackwell threatened James with 10 to 20 years of incarceration. The following day his father filed criminal charges against him for felony theft and simple criminal damage to property. Shortly after the charges were filed, the matter was submitted to the grand jury which returned a no true bill.
James filed a suit for damages against his father for malicious prosecution. Mr. Blackwell filed a reconventional demand for damages to the camp and for the loss of certain items. The trial court awarded James $3,925 in damages and dismissed Mr. Blackwell's reconventional demand.

PROOF OF MALICIOUS PROSECUTION
In order to prevail in a malicious prosecution action, the plaintiff must prove the following elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination *1087 in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. Jones v. Soileau, 448 So.2d 1268 (La.1984); Blood v. State, D. of Wildlife & Fisheries, 458 So.2d 1006 (La.App. 3rd Cir.1984); Hibernia Nat. Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980).
There is no dispute concerning proof of the first three elements aforementioned. Mr. Blackwell contends there is insufficient proof that he acted maliciously and without probable cause.
The existence of probable cause in any case depends upon the particular facts of that case. Probable cause does not depend merely upon the actual state of facts, but upon the defendant's honest belief of the facts in making the charge against the plaintiff. Blood v. State, D. of Wildlife & Fisheries, supra; Culpepper v. Ballard, 344 So.2d 110 (La.App. 2nd Cir. 1977); Bristow v. Messer, 336 So.2d 44 (La.App. 2nd Cir.1976). Where there is a lack of probable cause resulting from wanton and reckless disregard of the rights of the party sued, evincing absence of that caution and inquiry a party should employ before filing suit, malice will be inferred. Robinson v. Goudchaux's, 307 So.2d 287 (La.1975). Damages are to be presumed when all other elements of a suit for malicious prosecution are satisfied. Hibernia Nat. Bank of New Orleans v. Bolleter, supra. A reviewing court should not disturb an award absent a clear abuse of discretion under the particular circumstances of the case. Reck v. Stevens, 373 So.2d 498 (La.1979).
In the instant case, the record clearly reflects that the parents were having domestic problems and were not living together. Before Mr. Blackwell filed charges against James, the record shows that he had full knowledge that James accompanied his mother to the camp because she asked him to help her transport some of her personal belongings and community property. Mr. Blackwell argues that James broke into the camp and rummaged through it without his consent, and further, damaged his property. The testimony of several witnesses clearly reflects that: James merely complied with his mother's request for assistance; he did not break any locks but replaced the locks at his mother's request; and he also replaced the window pane which his mother broke.
The testimony of the following witnesses convinces us that Mr. Blackwell filed criminal charges against his son out of malice. James testified as follows:
"A. He [Mr. Blackwell] called me the 19th about 1:00 or 2:00 o'clock in the morning cussing me, and telling me he knew I had stole [sic] all his stuff from his camp, and he was gonna put me in jail for ten to twenty years.
Q. So it wasn't a very friendly conversation?
A. No, sir.
Q. How long did it last?
A. Just a matter of minutes."
James's testimony was corroborated by his wife, who testified as follows:
"Q. Do you know personally whether or not his father called him on April 19th, 1983?
A. Yes, I do.
Q. And what time of day was this?
A. It was night. It was about 2:00 o'clock in the morning.
Q. Did you talk to his father?
A. No, I didn't. My husband answered the phone.
Q. How long did they talk?
A. Just a few minutes.
Q. Was your husband upset after this conversation?
A. Very much.
Q. Why was he upset?

A. The phone call at that time of the morning startled us both. But just the fact that it was his daddy. And he [James] said he thought that he [Mr. Blackwell] had been *1088 drinking a lot, and just the things that he told him; that he [Mr. Blackwell] was going to have him [James] picked up, and things like that."

Mrs. Blackwell testified as follows:
"Q. Do you have any idea why your husband instituted these criminal proceedings?
A. Nothing, except personal opinions.
Q. Well, what is your personal opinion?
A. As vindictive to me; to hurt me.
Q. Has it hurt you?
A. Yes."
The daughter, Linda Kay DeRossier, testified as follows:
"Q. Okay. What is your relationship to these two parties here today?
A. That's my daddy and my brother.
Q. Okay. Do you have any personal knowledge in regards to this arrest; what this is all about here?
A. A lot of vengence [sic], I think.
* * * * * *
Q. Had he communicatedyour father, had he communicated with you personally prior to this arrest?
A. He called me on April the 19th.
Q. What time of the day was that?
A. About 12:00 or 1:00 o'clock at night.
Q. How long did you all talk?
A. Oh, a little while.
Q. What did he tell you then?
A. He wanted to know whose side I was on. He said that he wanted Rickey [James] sent up for life. He was very, very angry. HeI asked him if he didn't know that those things were mother's as well, and he said it didn't matter."
We find that the record overwhelmingly supports evidence of malice and lack of probable cause.
The court stated:
"The lack of probable cause is manifestly demonstrated by the No True Bill returned in this matter by the grand jury. It was communicated to this defendant before he filed that action that his wife, who had a share in this community property, was present and directing this plaintiff in all the action taken.
* * * * * *
I feel the real motivation for this criminal prosecution was retaliation for the fact that this defendant considered that perhaps his children, and particularly this son, was [sic] siding with his wife in the marital dispute they were having. Therefore, it was maliciously entered into for that motive."
We find no manifest error in the trial court's determinations. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Mr. Blackwell further argues that he is entitled to qualified immunity because he consulted an attorney as well as various public officials, and that he filed the criminal charges upon their recommendations. Louisiana courts have extended a qualified immunity to a defendant who files charges after seeking the advice of an attorney. Jones v. Soileau, supra; Johnson v. Pearce, 313 So.2d 812 (La.1975).
In the instant case, the record is void of any evidence supporting Mr. Blackwell's claim of qualified immunity. To the contrary, the Sheriff of Sabine Parish testified that he advised him that this was a family matter. Mr. Blackwell then stated that things had gone so far that the only thing he could do was file charges. The record is bare of any evidence that any attorneys or public officials advised him to file criminal charges; therefore, he is not entitled to qualified immunity.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, James C. Blackwell.
AFFIRMED.