Frances Marie WILLIAMS, etc.

v.

Danny DiVITTORIA, et al.

Civ. A. No. 90–491.

United States District Court,
E.D. Louisiana.

Nov. 5, 1991.

**1334**

Otha C. Nelson, Sr., Baton Rouge, La., for plaintiff.

Scott G. Vincent, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is a motion for reconsideration of a previous judge's ruling denying defendant's motion for summary judgment and his alternative motion to dismiss under F.R.C.P. 12(b)(6).

Upon reconsideration, and for the reasons that follow, defendant's motion to dismiss is GRANTED as to plaintiff's state law and § 1983 false arrest claims, her § 1983 malicious prosecution claims, as well as on plaintiff's state law defamation and § 1983 cruel and unusual punishment and due process claims. Defendant's motion for summary judgment is DENIED as to plaintiff's remaining pendent state law malicious prosecution claim, but that claim is dismissed without prejudice because it is pendent only.

### I.

This is a combined § 1983 civil rights and state law tort suit by an African–American woman, Frances Marie Williams, against Danny DiVittoria, a Tangipahoa Parish sheriff's deputy. In her state court petition plaintiff charged that she was a victim of a false arrest by deputy DiVittoria, and that she was subjected to malicious prosecution, defamation and violations of her due process rights.

### A.

On June 15, 1989, plaintiff's daughters, Lacrita Nicole Williams and Nadia Tanika Williams, were waiting with their cousin Taj Williams and other children for a school bus to take them to a parish summer school lunch program at the Independence Middle School. When the bus arrived at their stop, the driver, Norma Jean DiVittoria (the wife of defendant), refused to let Taj Williams on the bus. According to defendant, when his wife told Taj and another person that if they were going to fight as they had the day before, they should not get on the bus, Williams and the other young man did not get on the bus.

As Taj Williams walked to the Independence Middle School, he met up with plaintiff along the way, and they walked to the school together. When the bus arrived, plaintiff was waiting, and an argument started between Mrs. DiVittoria and plaintiff. Plaintiff says that she had been told by another child, Shantelle Bell, that the bus driver made the black children sit in the back of the bus, and let the white children sit in front. When she approached the bus, according to her, she merely told her children to get off the bus, and admonished the other children to tell their parents "what was going on." Little doubt she was angry.

Defendant tells a different story. He says that when the bus arrived at the school, plaintiff approached and began shouting obscenities at his wife, and threatened to beat her with a stick that plaintiff was brandishing. Mrs. DiVittoria lodged a complaint with the police after this incident.

Thereafter, as plaintiff and her children were walking home, defendant drove up beside them and began asking questions. Plaintiff claims that defendant exited the car, and approached her in a threatening manner as if to hit her. Defendant says that he simply approached plaintiff to ask her questions about the incident at school, and, in response, plaintiff began shouting and cursing him. (No doubt it would have been more professional for an officer other than the bus driver's husband to investigate the incident).

Defendant arrested plaintiff and charged her with public intimidation and disturbing the peace. The charges were later amended, but not importantly. Two weeks later,

state Judge Joseph Anzalone issued a warrant for plaintiff's arrest. Eventually, plaintiff moved for a preliminary examination to determine whether the charges against her should be dismissed for lack of probable cause. At a hearing before Judge Anzalone, at which plaintiff was represented by counsel and the judge received testimony and other evidence, the judge denied plaintiff's motion for dismissal of the charges and expressly found that probable cause existed for the charges.

Plaintiff's case proceeded through the state system until, on the day of trial, the prosecutor dismissed the case against her because the states's witnesses failed to appear.

### B.

Plaintiff filed suit in state court against deputy DiVittoria, the Tangipahoa Parish Sheriff and the sheriff's insurer. She claimed damages for (1) constitutional violations under 42 U.S.C. § 1983 for false arrest and imprisonment, malicious prosecution, cruel and unusual punishment and deprivations of her liberty without due process of law; (2) defamation, humiliation and embarrassment; (3) state law claims for false imprisonment and arrest; and (4) a state law claim for malicious prosecution. (Deputy DiVittoria is the only remaining defendant).

The suit was removed to federal court, and the defendants moved for summary judgment, and alternatively to dismiss under F.R.C.P. 12(b)(6) or 12(b)(1) all of plaintiff's claims against DiVittoria, the sheriff and the insurance company. The first presiding judge dismissed the claims against the sheriff and the insurance company, but denied the motions regarding deputy DiVittoria.

The court rejected the argument that the false arrest claim against deputy DiVittoria

was barred because of the state court's determination that probable cause for the arrest existed. (The court held that Louisiana law does not recognize the doctrine of collateral estoppel, and that Louisiana's res judicata principles are too restrictive to apply to the finding at the preliminary examination.[1])

Defendant then filed this motion urging the Court to reconsider the earlier Order under Federal Rule of Civil Procedure 60(b).[2] Defendant makes two special arguments for reconsideration: First, the Order denying defendant's Rule 12(b)(6) motion on plaintiff's false arrest claims was erroneous because Judge Anzalone's finding at the preliminary examination that there was probable cause for the charges against plaintiff is binding and bars plaintiff from pursuing a claim for false arrest or imprisonment based on her arrest on those charges. Second, defendant urges that there is no genuine issue of material fact on the issue of whether defendant is entitled to qualified immunity from plaintiff's § 1983 claims, and whether defendant acted with malice and without probable cause in arresting and charging plaintiff.

### II.

### A.

█ When determining whether to give preclusive effect to a state court judgment, a federal court must apply the issue preclusion rules of the state in which the judgment was rendered. *See* 28 U.S.C. § 1738; *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

█ Historically, Louisiana law is somewhat hostile to the idea of issue preclusion. *See Vicknair v. Hibernia Building Corp.,* 479 So.2d 904, 908 (La.1985) ("[c]ollateral estoppel or issue preclusion is not a valid

---

**1.** The court also rejected defendant's argument that plaintiff could not state a claim for false arrest under § 1983 because plaintiff had not alleged damages that are of constitutional proportions. This Court will not reach that issue because defendant does not challenge it on this motion for reconsideration.

**2.** Rule 60(b) provides in part that
Upon motion and upon such terms as are just, the court may relieve a party … from a final judgment, order, or proceeding for the following reasons: … (6) any other reason justifying relief from the operation of the judgment.

defense in Louisiana."); *Safeco Insurance Co. of America v. Palermo*, 436 So.2d 536, 537 (La.1983) (same); *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 156 (La.1978) ("Collateral estoppel is a doctrine of issue preclusion alien to Louisiana law."). Thus defendant's continued reliance on collateral estoppel theories and cases applying such theories[3] is inappropriate.

▪ Similarly, in Louisiana, res judicata principles applicable to this case are simply too restrictive to give preclusive effect in a later civil suit to a finding of probable cause in a prior criminal suit.[4] Res judicata bars relitigating an issue in a later proceeding only if: (1) there is identity of the thing demanded; (2) the cause of action is the same; and (3) the same parties appear in the same capacity. *See Vicknair, supra* at 908; La.Rev.Stat. 13:4231.

The absence of any one of the three identity factors is fatal to a res judicata defense, and a second suit will not be barred if there is any doubt as to the doctrine's applicability. *See Vicknair, supra* at 908; *First Guaranty Bank v. Durham*, 409 So.2d 380, 382 (La.App. 4 Cir. 1982). Clearly, the parties to this civil action, plaintiff and the deputy, and the parties to the criminal preliminary examination, plaintiff and the State, are not identical.

### B.

▪ What, then, is the effect of the prior determination of probable cause, if any?

In Louisiana, the tort of false arrest or imprisonment consists of two elements: (1) detention of a person; and (2) the unlawfulness of the detention. *See Touchton v. Kroger*, 512 So.2d 520, 524 (La.App. 3 Cir. 1987). Defendant notes that despite Louisiana's restrained preclusion rules, at least one Louisiana court has held that a plaintiff does not have a cause of action for false imprisonment based on an arrest for a crime for which he was convicted because such a plaintiff, as a matter of law, cannot prove that his detention was unlawful. *See Restrepo v. Fortunato*, 556 So.2d 1362, 1363 (La.App. 5 Cir.), *writ denied*, 560 So.2d 11 (La.1990).

Essentially, defendant argues that the question is not one of issue preclusion, but one of whether plaintiff has a cause of action as a matter of law. This argument instructs that one cannot prove that her detention was unlawful if a state court has determined at some time following the arrest either that the challenged arrest was conducted with probable cause, or that the criminal charges were supported by probable cause. Here, defendant concludes, Judge Anzalone decided both issues in favor of deputy DiVittoria, and, therefore, plaintiff cannot, as a matter of law, establish that she was wrongfully detained.

Although the Louisiana courts have not addressed this precise issue, this Court understands *Restrepo* to suggest that Louisiana courts would hold that a plaintiff has no cause of action for false arrest or imprisonment if a state court has held that either the challenged arrest or the ensuing charges were supported by probable cause. In *Restrepo*, the plaintiff complained that police officers "without warrants, 'falsely imprisoned and kidnapped [him]....'" *See Restrepo, supra* at 1363. However, noting that plaintiff had been convicted of the charges for which he had been arrested, the court summarily denied plaintiff's false imprisonment claim because he could not, as a matter of law, prove that his detention was unlawful. *Id.*

Thus, the Court believes that under Louisiana law a conviction blocks any potential

---

3. For example, defendant relies on at least four cases which turn expressly on issue preclusion or collateral estoppel. *See Hubbert v. City of Moore, Oklahoma*, 923 F.2d 769 (10 Cir.1991); *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42 (2 Cir.1985); *Terrones v. Allen*, 680 F.Supp. 1483 (D.Colo.1988); *Adamson v. Dayton Hudson Corp.*, 774 P.2d 478 (Okla.App.1989). These cases, from other jurisdictions, are of no

value here because of the eccentricity of Louisiana law on this question.

4. The Louisiana legislature revised the state's res judicata principle set forth in La.R.S. 13:4231 effective January 1, 1991. Because this suit was filed prior to the effective date of the new law, the Court will apply the prior law.

claim for civil relief for a claim of false arrest. *Restrepo* makes it impossible for a plaintiff, once convicted of a crime in subsequent judicial proceedings, to assert that *at the time the police arrested him* for the crime they did not have probable cause to do so. It follows that once a court determines in subsequent judicial proceedings that an arrest was made with probable cause, or that the existing charges are supported by probable cause, a plaintiff similarly cannot argue in a civil action for false arrest that the initial arrest was illegal.

Here, as in *Restrepo*, plaintiff asserts that she was arrested without a warrant and without probable cause. However, like *Restrepo*, plaintiff cannot show that the detention was unlawful.

### III.

■ Next, defendant contends the prior denial of summary judgment was erroneous, and asserts there are no disputed material facts for trial. Specifically, defendant says that plaintiff has failed to raise a material issue of fact with respect to defendant's alleged malice and lack of probable cause for the charges; both are crucial elements of plaintiff's malicious prosecution claim.[5]

■ Summary judgment is appropriate if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. If the party opposing the motion has failed to establish a crucial element of her case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,*

477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita Elec. Inds. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Moreover, the mere existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ Both malice in the institution of the criminal charges and lack of probable cause for the charges are among the substantive elements a plaintiff must prove to recover damages for malicious prosecution. *See Miller v. East Baton Rouge Parish Sheriff's Department,* 511 So.2d 446, 452 (La.1987).[6] Malice and probable cause are issues of fact to be determined by the trier of fact, unless only one conclusion can be drawn from the evidence. *Id.* at 453.

■ One can establish malice in at least four ways. First, a plaintiff proves malice if she can show that the defendant, in bringing the proceedings at issue, acted with "[a]ny feeling of hatred, animosity, or ill will toward the plaintiff. . . ." *Id.* Second, a defendant acts with malice when he "uses the prosecution for the purpose of obtaining any private advantage. . . ." *Id.* Third, a charge is malicious if the defendant made it with knowledge that it was false, or with reckless disregard for the charge's truth or falsity. *See Taylor v. Town of Arcadia,* 519 So.2d 303, 307 (La.

---

**5.** Initially, the Court notes that defendant's original motion requested that the Court dismiss all of plaintiff's claims under F.R.C.P. 12(b)(6). In granting the motion in part and denying it in part, the presiding judge did not discuss plaintiff's claim for § 1983 relief based on malicious prosecution.

It is clear that plaintiff cannot state a claim under § 1983 based on malicious prosecution. *See Buckley Towers Condominium, Inc. v. Buchwald,* 595 F.2d 253, 254 (5 Cir.1979) (per curiam) ("[T]he Civil Rights Acts do not provide a remedy against unfounded or even malicious claims or suits in state court."); *Beker Phosphate Corp. v. Muirhead,* 581 F.2d 1187, 1189 (5 Cir.1978) (per curiam) (same). Accordingly, the

Court dismisses this issue for failure to state a claim upon which relief may be granted.

**6.** The *Miller* court stated the elements of a malicious prosecution cause of action:

(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against the plaintiff who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.

*See Miller, supra* at 452.

App. 2 Cir.), *writ denied* 522 So.2d 1097 (La.1988). Fourth, a court may infer malice when there was a conspicuous lack of probable cause for the charges at issue. *See Aucoin v. Aetna Casualty & Surety Co.*, 520 So.2d 795, 799 (La.App. 3 Cir. 1987).

 However, if the charges are dismissed before trial, a presumption arises that the defendant acted both without probable cause and with malice. *See Watson v. Church's Fried Chicken, Inc.*, 527 So.2d 979, 981 (La.App. 4 Cir.), *writ denied*, 532 So.2d 135 (La.1988); *McCoy v. Burns*, 379 So.2d 1140, 1142 (La.App. 2 Cir.1980). In such cases the burden shifts to the defendant to prove the presence of probable cause and the lack of malice. *See Ballard v. Mook*, 550 So.2d 1208, 1212 (La.App. 4 Cir.1989), *writ denied*, 556 So.2d 1283 (La. 1990).

### A.

 Defendant claims that the unrefuted affidavits of defendant and his co-officer conclusively establish that defendant acted without malice for purposes of a motion for summary judgment. Federal Rule of Civil Procedure 56(e) provides that once a party moving for summary judgment has made and supported his motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial."

In their affidavits, the defendant, deputy Tony Aquado, and Mrs. DiVittoria establish the following: The deputies received calls regarding a disturbance at the Independence Middle School. Mrs. DiVittoria lodged a complaint about plaintiff with the officers; she charged that plaintiff approached her bus, shouted, yelled and screamed at the children and at her, repeatedly threatened to beat her, made profane, derogatory and insulting remarks to her, and that these actions frightened her so much that she shut the door to the bus to prevent plaintiff from boarding.

Defendant and deputy Aquado further state in their affidavits that when they encountered plaintiff, and defendant attempted to question her, she shouted obscenities at him. Defendant states in his affidavit that based on the information in the complaint and plaintiff's actions when he approached her, he believed there was probable cause to arrest her. Mrs. DiVittoria confirms that she relayed this information to the deputies in the form of a complaint. Aquado adds that he also believed there was probable cause to arrest plaintiff, and he would have done so himself even if defendant had not been with him.

Plaintiff's opposition to summary judgment on the issue of defendant's malice consists of four affidavits (her own, Taj Williams, Asalee Williams, and Lacrita Williams). None deny that Mrs. DiVittoria lodged a complaint against plaintiff with the police. But the affidavits significantly assert that when plaintiff asked deputy DiVittoria what she was being arrested for, he responded that he "would think of something." Plaintiff also states that Tony Aquado told her that he would not have arrested her if deputy DiVittoria had not arrived at the scene first.

The affidavits in this case demonstrate that genuine issues of material fact exist on the question of deputy DiVittoria's malice in arresting and charging plaintiff.

### B.

Defendant also moves for summary judgment on the question of whether deputy DiVittoria had probable cause for the charges on which he arrested and charged plaintiff. Lack of probable cause is still another essential element for malicious prosecution. The Louisiana Supreme Court has held that the important determination on lack of probable cause in a malicious prosecution action is whether the defendant had an honest and reasonable subjective belief about the guilt of the accused at the time he pressed charges. *See Jones v. Soileau*, 448 So.2d 1268, 1272 (La.1984).

Once again, plaintiff is entitled to the benefit of a rebuttable presumption that defendant lacked probable cause, because

the charges were dropped before trial. *See Watson, supra* 527 So.2d at 981. Further, unlike *Restropo's* false arrest setting, which invokes an objective finding of probable cause rather than a fact inquiry into one's subjective beliefs, the Louisiana Supreme Court has held that a conviction on the criminal charges does not conclusively establish that the defendant in a malicious prosecution action had probable cause at the time he pressed charges. *See Soileau, supra* at 1272.

Defendant has introduced evidence that he indeed had probable cause to believe plaintiff had committed the crimes of public intimidation and disturbing the peace when he pressed charges against her, even overlooking the state court's determination of probable cause.

The affidavits of defendant, deputy Aquado and Norma Jean DiVittoria establish that Mrs. DiVittoria's complaint against plaintiff satisfied the elements of a public intimidation charge,[7] and a charge of disturbing the peace [8] and that defendant and deputy Aquado relied on this complaint when they arrested and charged plaintiff.

Defendant and deputy Aquado also state in their affidavits that when they attempted to question plaintiff regarding the incident at the school, she responded by shouting and hurling obscenities at them.

This evidence, if unrefuted and viewed in isolation, is enough to establish that the officers had probable cause to arrest plaintiff for, and charge her with, public intimidation and disturbing the peace. However,

plaintiff has presented evidence which arguably calls into question whether deputy DiVittoria had probable cause to charge plaintiff.

■ Probable cause, or the lack of it, for purposes of a malicious prosecution action, depends on whether the circumstances of the particular case were such as to create an honest and reasonable belief in the mind of the defendant, at the time he charged the plaintiff, that the plaintiff was guilty of the crime. *See Soileau, supra* 448 So.2d at 1272; *Arceneaux v. Copes*, 497 So.2d 1037, 1040 (La.App. 3 Cir.1986), *writ denied*, 501 So.2d 774 (La.1987). For purposes of a malicious prosecution claim, probable cause does not depend merely upon the objective state of the facts, but also upon the defendant's *honest belief* of the facts in making the charge. *See Blackwell v. Blackwell*, 479 So.2d 1085, 1087 (La.App. 3 Cir.1985).

It is with regard to this introverted element of the malicious prosecution-probable cause inquiry that plaintiff has demonstrated a genuine issue of fact for trial. Specifically, plaintiff points to the two affidavits which indicate that when she asked deputy DiVittoria what he was arresting her for, he responded that he would "think of something."

■ If plaintiff can prove that defendant in fact made such a statement, defendant's subjective, honest belief that plaintiff actually committed a crime might be seriously called into question.[9] A trier of

---

7. La.Rev.Stat. art. 14:122 provides, in part:

Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:

\* \* \* \* \* \*

(5) School bus operator.

8. La.Rev.Stat. 14:103 makes it a crime to do any of the following in such a manner as would foreseeably disturb or alarm the public:

\* \* \* \* \* \*

(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his pres-

ence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty. . . .

9. That probable cause may have existed as a matter of law to support plaintiff's arrest in the false arrest setting is not determinative here. When testing the legitimacy of an arrest for purposes of a false arrest claim, courts use an objective standard. That is, probable cause "exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify *a man of average caution* in the belief that the person to be arrested has committed or is committing an offense." *See Miller, supra* 511 So.2d at 452 (emphasis supplied) (citing *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

fact could certainly infer from this statement that defendant did not really believe that plaintiff was guilty of any crime when he charged her, but, rather, made the charges for some less acceptable reason.

Accordingly, plaintiff has adequately demonstrated that genuine issues of material fact remain to be tried with respect to the probable cause element of her malicious prosecution claim.

### IV.

The first presiding judge did not address plaintiff's state law claim for defamation arising out of the arrest. Defendant has urged the Court to reconsider that aspect of the earlier motion. Accordingly, the Court will now address the defamation claim.

■ Under Louisiana law, a speaker is entitled to an absolute defense in a defamation action arising out of something he says in the course of a judicial or quasi-judicial proceeding, without regard to the speaker's notion of the truth or falsity of the statement. *See Goldstein v. Serio,* 496 So.2d 412, 414 (La.App. 4 Cir.1986), *writ denied,* 501 So.2d 208 (La.1987), *writ denied,* 501 So.2d 209 (La.1987).

In *Goldstein,* the court held that a group of lawyers had no defamation claim against former clients who filed complaints against them with the Louisiana State Bar Committee on Professional Responsibility, although the complaints were later dismissed as groundless. *Id.* at 413–14. The court concluded that the clients were entitled to an absolute privilege defense to the defamation claims because the complaints were made in a quasi-judicial proceeding

(an attorney disciplinary proceeding). *Id.* at 414.

■ Similarly, an absolute privilege attaches to all of deputy DiVittoria's statements made in filing the charges against plaintiff. Because plaintiff's defamation claim is based solely on the assertion that deputy DiVittoria falsely accused her of crimes, and because he made all the alleged statements in the course of judicial proceedings charging plaintiff with those crimes,[10] her complaint on this cause of action must be summarily dismissed.

### V.

Finally, plaintiff alleges that deputy DiVittoria subjected her to cruel and unusual punishment and deprived her of her liberty without due process.[11] Plaintiff contends that these violations amounted to constitutional misconduct actionable under § 1983.

■ These allegations are entirely groundless. Despite some lower court decisions which apply in a wholly different fact setting,[12] the Supreme Court has held that Eighth Amendment safeguards are not triggered until the state has secured a formal adjudication of guilt. *See Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 99 S.Ct. 1861, 1872, n. 16, 60 L.Ed.2d 447 (1979). Any punishment imposed by the state before such a determination of guilt is protected by the Due Process Clause of the Fourteenth Amendment. *Id.* Accordingly, plaintiff's § 1983 claim for cruel and unusual punishment under the Eighth Amendment must be summarily dismissed.

■ Plaintiff also contends that deputy DiVittoria's actions in arresting and charging her deprived her of her liberty without

---

In subtle contrast, when judging probable cause in malicious prosecution cases, courts delve into the entirely different factual inquiry of what the officer performing the arrest actually, subjectively believed.

10. Plaintiff does not assert that defendant made statements accusing her of crimes to anyone outside the judicial process.

11. Again, these claims were not previously ruled on. In reconsidering the ruling, the Court will discuss these claims.

12. For example, some courts have held that, in limited circumstances, where the conduct is so egregious as to shock the conscience, a police officer's use of excessive force or violence can violate a plaintiff's Eighth Amendment rights. *See Landrigan v. City of Warwick,* 628 F.2d 736 (1 Cir.1980); *Howell v. Cataldi,* 464 F.2d 272 (3 Cir.1972) (officer smashed plaintiff's head into a counter, another hit plaintiff in the stomach, another hit him on the head with a blackjack, and another banged on his shins with a wooden club).

due process of law. However, an arrestee cannot successfully challenge her arrest on Fourteenth Amendment grounds if the arrest passes muster under the more stringent Fourth Amendment standard. *See McKinney v. George*, 726 F.2d 1183, 1187 (7 Cir.1984) (Because the Fourth Amendment standard is more specific than the Due Process standard, "a seizure that passes muster under the Fourth Amendment should also satisfy the requirements of the due process clause viewed as an independent source of constitutional norms....").

Because the Court dismisses plaintiff's § 1983 claims challenging her arrest under the Fourth Amendment, she cannot argue that defendant arrested and detained her in violation of her Fourteenth Amendment due process rights.

Accordingly, upon reconsideration, defendant's motion to dismiss is granted as to plaintiff's state law and § 1983 false arrest claims, her § 1983 malicious prosecution claim, her state law defamation claim, and her § 1983 cruelty and due process claims. Defendant's motion for summary judgment is DENIED as to plaintiff's state law malicious prosecution claim, leaving that issue alone to be resolved at trial.

## VI.

■ Finally, with all the federal claims dismissed, the Court is faced with the decision whether to keep plaintiff's remaining pendent state law malicious prosecution claim. The Supreme Court has held that ordinarily, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The Court later clarified *Gibbs* by holding that the decision whether or not to exercise pendent jurisdiction after dismissing a case's federal causes of action is within the discretion of the district court. *See Rosado v. Wyman*, 397 U.S. 397, 404–

05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970).

The main reason courts keep jurisdiction over state claims after the federal claims have been dismissed is judicial economy. *See Gibbs, supra* 383 U.S. at 726, 86 S.Ct. at 1139; *LaPorte Construction Co., Inc. v. Bayshore National Bank*, 805 F.2d 1254, 1257 (5 Cir.1986). Generally, judicial economy weighs in favor of retaining federal jurisdiction only when the federal claims are dismissed after a substantial expenditure of federal resources, such as a trial on the merits. *See Gibbs, supra*. (Supreme Court affirmed district court's decision to exercise federal jurisdiction over pendent state claims after federal claims dismissed following trial on the merits); *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996, 1001 (5 Cir.1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Holloway v. Walker*, 784 F.2d 1287, 1294 (5 Cir.1986).

Here, even less federal resources have been committed than in the *Holloway* and *Hudak* cases when the district courts in those cases decided to dismiss the state claims. Judicial economy does not argue in favor of retaining pendent jurisdiction in this case over plaintiff's state law malicious prosecution claim. Little has been done in this case, although trial was imminent. In fact, plaintiff conducted practically no discovery. Accordingly, the Court dismisses plaintiff's pendent state law malicious prosecution claim without prejudice.[13] *See Hamill v. Wright*, 870 F.2d 1032, 1038 (5 Cir.1989).

---

13. In the Judicial Improvements Act of 1990, Congress codified the related doctrines of pendent and ancillary jurisdiction. *See* 28 U.S.C. § 1367. The Act changes the names of these rules, calling them both rules of "supplemental jurisdiction." Section 1367 does not apply here because this case commenced before the enactment of the Act on December 1, 1990. *See Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1345, n. 3 (5 Cir.1991).