DUFRESNE, Judge.
In this writ application, Western Development Co., relator, asks that we reverse an order of the trial judge overruling its exception of res judicata. On initial hearing we denied the writ, briefly commenting that on the showing made, it did not appear that the issue in the present nullity action had been previously litigated in the California courts. On remand from the Louisiana Supreme Court, 588 So.2d 1103, we have been ordered to reconsider the application and issue an opinion regarding our disposition of the matter. After further review, and for the following reasons, we adhere to our original ruling and deny the writ.
The underlying facts are straightforward. Relator obtained a Louisiana deficiency judgment against several defendants, one of whom is Glenn Abel, a California resident and attorney admitted to practice in both that state and Louisiana. It then sought to make that judgment exec-utory in a California court. Abel urged there that the judgment was unenforceable against him because the Louisiana court had never acquired personal jurisdiction over him either by proper service or by his making a general appearance in the case. Relator’s papers here indicate that Abel’s averments and supporting affidavits were rejected summarily and on their face, with no testimony or other evidence being re *555 ceived. The trial judge simply stated that a review of various pleadings from the original suit showed Abel to have been represented by Richard Boutall, and that Boutall’s subsequent affidavit to the contrary was not persuasive. Having determined that Abel had thus made a general appearance in the Louisiana proceeding through counsel, he ruled that the probable defect in service of process was moot. The court thereupon made the Louisiana judgment a judgment of the California court.
Abel thereupon filed the present action seeking to have the original Louisiana judgment nullified for lack of personal jurisdiction. He alleges in his petition, first, that proper service of the suit was never made upon him under our long-arm statute. He next alleges that when he first learned of the suit he spoke by telephone with Boutall (also a defendant) and specifically told him that he had not been served and that he did not want Boutall to represent him. He also noted that in his opinion it would be a conflict of interest for Boutall, a potential solidary obligor, to undertake such representation. He further alleges that he then wrote to Boutall to reiterate the substance of the telephone call, and added that in the event he was properly served, he would engage his own counsel. He finally contends that he was never a party to the original purchase of the property, the seizure and sale of which gave rise to the deficiency sued upon, and that the only powers of attorney he had ever given to Boutall related to a partnership not involved in the property purchase, and not a defendant in the subsequent deficiency action. We also note that there is information in relator’s papers which indicates that Abel had informed relator’s counsel in the deficiency action that notwithstanding any actions by Boutall in the suit to the contrary, Boutall did not in fact represent him.
Relator urged an exception of res judica-ta to this petition, asserting that the issue of personal jurisdiction has already been resolved in California, and therefore under our state’s laws we are precluded from relitigating that question. It also asserts that the “full faith and credit clause” of the United States Constitution mandates that we give preclusive effect to the judgment of the California court. The trial judge denied the exception, and this writ application followed.
Initially, we reject relator’s proposition that when a sister state court has given effect to a judgment rendered by a Louisiana court, that same Louisiana court is thereby precluded from further considering the validity of its own judgment by operation of the “full faith and credit” clause of Article IV of the United States Constitution. As far as we can determine, this issue is res nova. However, to subscribe to such a principle would in this court’s opinion, be tantamount to surrendering this state’s sovereign power to determine the validity of its own courts’ pronouncements to the courts of a sister state. Such a result was not contemplated when the clause was enacted, nor is it supported by any jurisprudence known to us.
It is well settled that the purpose of the “full faith and credit” clause was to replace the prior rule of comity between the sovereign American states, whereby each state was given discretion as to whether to recognize judgments of the sister states, with a constitutional mandate that such judgments be recognized in the receiving states, Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). The clause does not give inherent extra-territorial effects to the judgments of the various states’ courts, nor does it give to a receiving state the jurisdiction to declare invalid judgments of an issuing state within the confines of that issuing state, Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Instead, it simply establishes a constitutional eviden-tiary rule that the judgments of the issuing state must be accepted in the receiving state as conclusive of the issues adjudged, except where it appears that the issuing state lacked jurisdiction or that some due process problem existed, State of Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239 (1888). Absent *556 such defects, the receiving state is compelled to recognize the judgment of the issuing state and make it executory within its own borders. Similarly, if it finds such a defect it may then refuse to give local force to the issuing state’s judgment. But there the power of the receiving state ends. It cannot nullify or otherwise negate the efficacy of the original judgment within the issuing state for the same reasons that the issuing state can not, through the exercise of its own sovereignty, extend the effects and enforcement of its judgment into the receiving state. Either action would constitute an encroachment by one state on the sovereignty of the other, see In re C.A. Taylor Logging & Lumber Co., 28 F.2d 526, 529 (Wash.W.D.1928).
These same principles were implicated in the companion cases of Williams v. State of North Carolina, supra. The issue in both was whether North Carolina was required by the “full faith and credit” clause to subordinate its interests in the marital status of its citizenry to the similar interests of Nevada, by recognizing two Nevada divorce decrees which offended North Carolina’s domestic policies. While eventually holding that on the facts of those cases, the clause did not compel recognition of the Nevada divorces by North Carolina, the Court implicitly, if not explicitly, concluded that the divorces remained completely valid in Nevada, notwithstanding the refusal of North Carolina to recognize them, see Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945) (Rutledge, J. dissenting, at 65 S.Ct. 1101.)
It is therefore clear that just as a decision by a sister state court refusing to recognize a judgment from another state can have no effect on the validity of that judgment in the issuing state, neither can such a decision by a sister state recognizing such a judgment be conclusive on the issue of whether that judgment remains subject to collateral attack in the issuing state.
In the present case, had our judgment been denied “full faith and credit” in California, we would have been under no constitutional mandate to negate the effects of that judgment against Abel were he to return to this state. By analogy, we find no reason to conclude that we are precluded by that same clause from entertaining a collateral proceeding attacking our own judgment, an action permissible under our laws, simply because a sister state court was not persuaded of facts which would have permitted it to circumvent the mandate of the clause. And because we decide that the clause does not therefore compel us to accept as conclusive any rulings of the California court as they affect the susceptibility of our own judgment to collateral attack, we need only give those rulings the effects which we deem appropriate under our own laws.
Relator urges, of course, that our state laws also require that we give conclusive effect to the California judgment under the principles of res judicata. Again, we disagree. The law of res judicata applicable here is prior to La.R.S. 13:4231, which required for its operation the identity of 1) the parties, 2) the cause, and 3) the thing demanded. Moreover, our courts have consistently held that the common law principle of collateral estoppel or issue preclusion forms no part of our civilian concept of res judicata, Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904 (La.1985); Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978).
In the present case, there is no identity of the thing demanded, nor indeed could there have been. In California, the thing demanded could only be a refusal by that court to recognize our judgment. As shown above, that court was without jurisdiction to nullify or otherwise set aside any effects of that judgment in this state. What is demanded here, on the other hand, is that our judgment be nullified, the precise relief which the California court could not grant because of lack of jurisdiction.
It is apparent, then, that relator’s basic argument is that because the facts of personal service and general appearance have been the subject of litigation in a sister state, those facts cannot be relitigated here. This is nothing more than an argument for application of the principle of *557 issue preclusion, a concept not recognized under the law applicable to this action.
We also note that we are concerned about whether there was indeed a full litigation of this matter in California. The scant record of that proceeding which relator presents here shows that the trial judge ruled on the face of the papers, without taking further testimony. As best we can tell, that proceeding appears similar to what would in this state be a motion for summary judgment. Under our law, summary judgment could not have been granted because of the contested issues of fact, and Abel would have been entitled here to a full trial on the merits of his claim.
We finally point out that in declining to give preclusive effect to the actions of the California court, we do not thereby impinge upon any policies or interests of that state. Except for the accident of Abel’s residence, the entire matter involves our own interests. All of the underlying transactions occurred here, the Relator is a Louisiana partnership, the matter was tried in our courts and under our laws, and the judgment at issue remains subject to collateral attack here by way of a full trial. In addition, there are allegations which go to the conduct of members of our bar, certainly matters of grave importance to us.
Although Relator may be compelled to relitigate certain issues by this strict application of our law of res judicata, that result is dictated by our state’s policies. As stated in Welch v. Crown Zellerbach Corp, supra, at 157:
By choosing to define res judicata in narrow terms, the legislature apparently concluded that the inconvenience caused by relitigation is outweighed by the injustice of perpetuating erroneous judicial decisions.
For the above reasons, the writ is denied. WRIT DENIED.